IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LARRY JOHNSON, WENDY WALKER, AMELIA PELLICCIOTTI, NATIONAL FEDERATION OF THE BLIND OF TEXAS, THE COALITION OF TEXANS WITH DISABILITIES,<br>    *Plaintiffs*,<br><br>v.<br><br>JACQUELYN F. CALLANEN, IN HER OFFICIAL CAPACITY AS THE BEXAR COUNTY ELECTIONS ADMINISTRATOR, BEXAR COUNTY, TEXAS,<br>    *Defendants*. | SA-22-CV-00409-XR |

## ORDER

On this date, the Court considered Defendants' Motion to Dismiss (ECF No. 13), Plaintiffs' response (ECF No. 15), and the parties' oral argument. After careful consideration, the Court issues the following order.

## BACKGROUND

Texas conducts elections in its 254 counties, including Bexar County, pursuant to the Texas Election Code (the "Election Code"). Under the Election Code, an individual is eligible to vote in Texas if they are a "qualified voter." TEX. ELEC. CODE § 11.001(a)(1). The Election Code defines a "qualified voter" as a person who is eighteen years of age or older, a United States citizen, a Texas resident, and a registered voter. *Id.* § 11.002. A "qualified voter" also cannot be declared mentally incapacitated or convicted of a felony unless they have a fully discharged sentence or have been pardoned. *Id.* The Election Code further establishes that an eligible Texas voter has the right to "vote in secret and free from intimidation[.]" *Id.* § 62.0115(b)(2). It also permits certain voters to vote by mail, including those who have a physical condition that prevents them from

1

appearing at a polling place on an election day without a likelihood of needing personal assistance or of injuring their health. *Id.* § 82.002(a)(1).

To vote by mail in Bexar County, an eligible local voter must complete and submit a paper ballot. ECF No. 1 ¶¶ 1, 3, 48–49. Upon receiving a paper ballot by mail, the eligible voter must locate a large, outer envelope sent to their address, which contains the paper ballot, a "secrecy" envelope, and a "return" envelope. *Id.* ¶ 49. The eligible voter must then open and locate their paper ballot inside the large, outer envelope. *Id.* After doing so, they must read and complete their paper ballot by hand. *Id.* The eligible voter is then required to place their completed paper ballot inside the "secrecy" envelope and subsequently seal the "secrecy" envelope. *Id.* They must then place the sealed "secrecy" envelope containing their paper ballot inside the "return" envelope. *Id.* Thereafter, the eligible voter must sign a declaration on the outside of the "return" envelope, affirming that they are qualified to vote by mail. *Id.* Finally, the eligible voter must place the signed "return" envelope and their paper ballot therein in the mail. *Id.*

Pursuant to federal law, Bexar County offers an electronic alternative for active military and overseas eligible voters. *Id.* ¶¶ 7, 58–60. To avail themselves of this electronic alternative, an active military or overseas individual must first complete an application to vote by mail called the Federal Postcard Application ("FPA"), a form created by federal law to permit active military and overseas voters to vote by mail.[1] The active military or overseas individual must indicate in their FPA whether they would like to receive their ballot and voting materials by mail, common or contract carrier, or email.[2] They must also sign and date the FPA before returning it to the Bexar

---

[1] *See* Bexar County Elections Department, *Military/Overseas Voters*, https://elections.bexar.org/1696/MilitaryOverseas-Voters (last visited June 17, 2022); *see also* Department of Defense, *Federal Voting Assistance Program—Texas*, https://www.fvap.gov/guide/chapter2/texas#election-offices (last visited June 17, 2022).

[2] *See* Texas Secretary of State, *Military & Overseas Voters*, https://www.votetexas.gov/voting-by-mail/military-and-overseas-voters.html (last visited June 17, 2022); *see also* Department of Defense, *supra* note 1.

County Elections Department (the "Elections Department") by mail, common or contract carrier, in-person delivery, fax, or email.[3] If the Elections Department determines that the active military or overseas individual is eligible to vote by mail, the Elections Department then sends the ballot as requested in their FPA.[4] The active military and overseas eligible voter must then return their ballot by mail, or common or contract courier, like any other mail-in ballot.[5]

On April 27, 2022, three visually impaired individuals and two non-profit organizations comprising visually impaired and otherwise disabled Texans—all of whom want to vote by mail in secret and free from intimidation in upcoming elections—filed this action against Jacquelyn F. Callanen, in her official capacity as the Bexar County Elections Administrator, and Bexar County (together, "Defendants"). The three visually impaired individual plaintiffs are Larry Johnson, Wendy Walker, and Amelia Pellicciotti, each of whom is totally blind, resides in San Antonio, Texas, and is registered to vote in Bexar County. *Id.* ¶¶ 15–17. The two organizational plaintiffs are the National Federation of the Blind of Texas ("NFB-TX") and the Coalition of Texans with Disabilities ("CTD"). *Id.* ¶¶ 18–19. NFB-TX "promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life . . . including by ensuring its blind members can vote on equal footing with every other Texan." *Id.* ¶ 18. CTD "is the oldest and largest member-driven cross-disability organization in Texas" and similarly seeks to ensure that its members can vote on an equal basis. *Id.* ¶ 19. Ms. Walker and Ms. Pellicciotti are members of NFB-TX, and Mr. Johnson is a member of CTD. *Id.*

---

[3] *See* Texas Secretary of State, *supra* note 2. If the active military or overseas individual submits their FPA by fax, they must also return their original FPA by mail. *See id.*

[4] *See* Texas Secretary of State, *supra* note 2; *see also* Bexar County Elections Department, *supra* note 1.

[5] *See* Texas Secretary of State, *supra* note 2. During oral argument, Defendants' counsel stated that the mail-in ballot, even if sent by email, must be printed, completed, and signed.

3

¶¶ 15–17. NFB-TX's and CTD's membership includes many more visually impaired and otherwise disabled individuals who—like Mr. Johnson, Ms. Walker, and Ms. Pellicciotti—reside and are registered to vote in Bexar County and want to vote in secret and free from intimidation in upcoming elections. *Id.* ¶¶ 20–21.

Plaintiffs allege, however, that they and their members are unable to vote by mail independently and privately. *See id.* ¶¶ 1, 4, 9, 50, 52–55. They claim that, since Bexar County provides mail-in ballots to local eligible voters in paper form only, voting by mail in Bexar County is "inaccessible to blind or low-vision voters and other voters with disabilities that prevent them from marking a paper ballot." *Id.* ¶ 1. Mr. Johnson, Ms. Walker, and Ms. Pellicciotti, for instance, "cannot read the printed text that appears on the paper mail-in ballot" without assistance. *Id.* ¶ 53. "Individuals who cannot use their hands or arms and who are unable to fill out a paper ballot by reason of disability" also cannot complete and submit a paper mail-in ballot on their own. *Id.* ¶ 54. Although they might be able to vote in person, Plaintiffs allege that they "are entitled to equal access as individuals without disabilities to a mail-in ballot to vote privately and independently." *Id.* ¶ 56. They have therefore sued Ms. Callanen and Bexar County for violations of Title II of the American with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act.[6] *Id.* ¶¶ 85–129.

---

[6] This is not the first time that NFB-TX and CTD have sought relief on behalf of visually impaired and otherwise disabled voters who cannot complete and submit a paper mail-in ballot on their own in Texas. On July 24, 2020, NFB-TX, CTD, and three individuals filed suit against Texas Secretary of State ("Secretary") Ruth Hughs, in her official capacity, in the Austin Division of the Western District of Texas. *See* Compl., *Semien v. Hughs*, No. 1:20-CV-0789-LY (W.D. Tex. July 24, 2020), ECF No. 1. In that case, the plaintiffs alleged that the Secretary "refuses to allow county election officials to provide accessible electronic ballots to individuals with vision and print disabilities." *Id.* ¶ 9. They also filed a motion for a preliminary injunction, requesting an order that would require the Secretary to "immediately allow counties to implement a ballot-by-mail voting system that is accessible to individuals with print disabilities, and that can be completed independently and privately in order to bring their conduct into compliance with federal law." Mot. for Prelim. Inj., *Semien*, No. 1:20-CV-0789-LY, ECF No. 6 at 23. The Secretary responded by filing a motion to dismiss. Mot. to Dismiss, *Semien*, No. 1:20-CV-0789-LY, ECF No. 19. Therein, the Secretary argued, *inter alia*, that sovereign immunity barred the plaintiffs' claims against her because she "lacks authority to enforce the provisions they are challenging." *Id.* at 8. Local election officials, the Secretary urged, "administer Texas elections in general and voting by mail in particular[,]" not her. *Id.* at 11. In her response to the plaintiffs' motion for a preliminary injunction, the Secretary again asserted that "Bexar County has an independent obligation to follow the Texas Election Code. And it will not send such ballots unless ordered to do so by the Court." Resp., *Semien*, No. 1:20-

Plaintiffs allege that Ms. Callanen "is tasked with the administration of the mail-in balloting system in Bexar County, including the electronic ballots provided to military and overseas voters." *Id.* ¶ 22. They further assert that "Bexar County has an independent obligation under federal law to provide for accessible mail-in ballots." *Id.* ¶ 67.

Plaintiffs also claim that Defendants were aware of the difficulties they and their members have experienced when attempting to vote by mail on their own. On June 25, 2020, Mr. Johnson called Ms. Callanen and informed her that he wanted to vote by mail, but that he needed an electronic system to do so because he is blind and, as a result, cannot complete the paper mail-in ballot on his own. *Id.* ¶ 69. In response, Ms. Callanen told Mr. Johnson that the electronic system Bexar County provides for its active military and overseas eligible voters might be a suitable alternative. *Id.* Plaintiffs allege that Ms. Callanen sent Mr. Johnson a copy of an electronic ballot and that Mr. Johnson "found it to be accessible using his screen reader technology." *Id.* ¶ 70.

Plaintiffs further submit that on January 30, 2021, Mr. Johnson mailed a letter to Ms. Callanen, informing her that he wished to vote by mail in the upcoming local election. *Id.* ¶ 72. In his letter, Mr. Johnson once again explained that he needed an accessible electronic ballot because of his visual impairment. *Id.* Specifically, he "asked for an accommodation to fill out the ballot in the same manner as voters overseas." *Id.* On March 5, 2021, Ms. Callanen responded to Mr. Johnson's letter, stating that she would submit his request to the Secretary and provide a response within a week. *Id.* ¶ 73. Ms. Callanen, however, did not respond within the indicated timeframe. *Id.* ¶ 74. Thus, on March 15, 2021, Mr. Johnson sent Ms. Callanen an email, following up on his request. *Id.* ¶ 75. Ms. Callanen did not respond to his email, so Mr. Johnson sent her a second

---

CV-0789-LY, ECF No. 26 at 5 (citations omitted). On December 23, 2020, before the district court ruled on the Secretary's motion to dismiss and the plaintiffs' motion for a preliminary injunction, the plaintiffs filed a notice of voluntary dismissal. Notice of Dismissal, *Semien*, No. 1:20-CV-0789-LY, ECF No. 32.

email on March 23, 2021. *Id.* This time, Ms. Callanen responded and stated that she had not received a response from the Secretary. *Id.*

Plaintiffs allege that on April 5, 2021, Disability Rights Texas sent a demand letter to Bexar County on behalf of NFB-TX, CTD, and Mr. Johnson.[7] *Id.* ¶ 77. The demand letter asserted that the "current vote-by-mail system in Bexar County does not allow voters with disabilities, including the blind, to cast a private ballot." ECF No. 1-2 at 2. The letter also stated that "the current vote-by mail process . . . discriminates against voters with disabilities" in violation of Title II of the ADA and § 504 of the Rehabilitation Act. *Id.* Although the letter requested a response no later than April 21, 2021, no response followed. ECF No. 1 ¶¶ 80–81. A second demand letter was sent on August 6, 2021, but again, no response followed. *Id.* ¶ 82. Plaintiffs, therefore, initiated this action.

Upon filing their complaint, Plaintiffs also filed a motion for a preliminary injunction. ECF No. 3. On May 19, 2022, Defendants filed a motion to dismiss. ECF No. 13. On June 2, 2022, Plaintiffs filed a response. ECF No. 15. On June 15, 2022, the Court heard oral argument on the motion to dismiss.[8] ECF No. 19.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of claims in a complaint for failure to state a claim upon which relief may be granted. To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

---

[7] Plaintiffs attached the demand letter as an exhibit to their complaint. *See* ECF No. 1-2. It is addressed to the Bexar County Criminal District Attorney's Office. *See id.* at 2.

[8] The Court also heard argument on Plaintiffs' motion for a preliminary injunction.

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), all factual allegations from the complaint must be taken as true and must be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. The Court may consider the contents of the complaint, as well as attachments thereto, when resolving a Rule 12(b)(6) motion to dismiss. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

## II. Analysis

Defendants argue that Plaintiffs have failed to state a claim upon which relief may be granted. *See generally* ECF No. 13. They contend that the Election Code does not authorize Ms. Callanen to provide, as Plaintiffs request, visually impaired and otherwise disabled voters the opportunity to vote by mail in the same manner that active military member and overseas eligible voters currently vote by mail. *Id.* ¶¶ 4–7. They further argue that the Election Code already provides reasonable accommodations for disabled individuals to vote in person. *Id.* ¶ 8. In their view, Plaintiffs merely "do not like the practical and effective accommodation made by [Texas] law but instead seek a different accommodation." *Id.* ¶ 9. Based on these assertions, Defendants ask the Court to dismiss Plaintiffs' ADA and Rehabilitation Act claims. *Id.* at 5.

### A. Title II of the ADA

Title II of the ADA "provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"

*Tennessee v. Lane*, 541 U.S. 509, 513 (2004) (quoting 42 U.S.C. § 12132). The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A). Federal regulations, in turn, provide that "a physical or mental impairment" includes visual impairments. 28 C.F.R. § 35.108(b)(2). Federal regulations further explain that seeing is a major life activity under the ADA. *Id.* § 35.108(c)(1)(i). Additionally, Title II of the ADA "defines 'public entities' to include local governments." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citing 42 U.S.C. § 12131(1)(A)).

Plaintiffs allege that Mr. Johnson, Ms. Walker, Ms. Pellicciotti, and many of NFB-TX's and CTD's members are visually impaired or otherwise disabled in a manner that substantially limits one or major life activities. ECF No. 1 ¶¶ 15–19, 24, 31, 37, 53, 93–94. This sufficiently establishes at the pleading stage that Plaintiffs are disabled as defined by the ADA. Furthermore, they have filed this suit against the local government of Bexar County and Ms. Callanen, in her official capacity as the Elections Administrator of Bexar County. *See id.* ¶¶ 12, 22, 67, 96. Plaintiffs, therefore, have properly invoked Title II of the ADA against a public entity.

The Court now considers whether Plaintiffs have alleged sufficient facts to state a *prima facie* case of discrimination under Title II of the ADA. To do so, Plaintiffs must show:

> (1) that [they are] a qualified individual within the meaning of the ADA; (2) that [they are] being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or [are] otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [their] disability.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)). The Court addresses each element in turn.

8

As to the first element, a qualified individual within the meaning of Title II of the ADA is a disabled individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiffs allege that Mr. Johnson, Ms. Walker, Ms. Pellicciotti, and many members of NFB-TX and CTD are qualified to vote under Texas law and have in fact regularly done so in past elections. ECF No. 1 ¶¶ 15–19. Plaintiffs further allege that they and their members are eligible to vote, including by mail, and want to avail themselves of the opportunity to do so in upcoming elections. *See id.* ¶¶ 15–17, 20–21, 95. These allegations sufficiently establish at the pleading stage that Plaintiffs are qualified individuals within the meaning of the ADA.

With respect to the second element, the Election Code guarantees an eligible voter the right to "vote in secret and free from intimidation[.]" TEX. ELEC. CODE § 62.0115(b)(2). It further provides that an eligible voter who has a physical condition that prevents them from appearing at a polling place on an election day, without a likelihood of needing personal assistance or of injuring their health, has a right to vote by mail. *Id.* § 82.002(a)(1). Together, these provisions establish that voting by mail in Texas is at least a benefit—if not an actual, service, program, or activity—for which Bexar County is responsible.[9] *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494,

---

[9] Indeed, "Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights[,]"*Lane*, 541 U.S. at 524, and "[i]t is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure[,]'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). *See also Baker v. Carr*, 369 U.S. 186, 208 (1962) ("A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution[.]"); 42 U.S.C. § 12101(a)(3) (stating that Congress enacted the ADA upon finding that "discrimination against individuals with disabilities persists in such critical areas as . . . voting"). The Supreme Court has observed that the "decisions of other courts, too, document a pattern of unequal treatment in administration of a wide range of public services, programs, and activities, including . . . voting." *Lane*, 541 U.S. at 525 (citing *Doe v. Rowe*, 156 F. Supp. 2d 35 (D. Me. 2001); *New York ex rel. Spitzer v. County of Delaware*, 82 F. Supp. 2d 12 (N.D.N.Y. 2000)).

506 (4th Cir. 2016) ("This case does not turn on whether there is a standalone right to vote privately and independently without assistance. Plaintiffs' argument is that defendants have provided such a benefit to non-disabled voters while denying that same benefit to plaintiffs on the basis of their disability."); *see also Merrill v. People First of Ala.*, 141 S. Ct. 25, 27 (2020) (Sotomayor, J., dissenting) ("Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both.").

Plaintiffs allege, however, that they are unable to vote by mail independently and privately without assistance because their visual impairments, among other disabilities, prevent them from completing and submitting on their own the paper mail-in ballot Bexar County requires. ECF No. 1 ¶¶ 1, 4, 9, 50, 52–55. They also assert that Ms. Callanen, as Elections Administrator for Bexar County, is charged with administering mail-in voting in Bexar County. *Id.* ¶ 22; *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) ("Texas's vote-by-mail statutes are administered, at least in the first instance, by local election officials." (citing TEX. ELEC. CODE § 83.005)). These allegations sufficiently establish at the pleading stage that Plaintiffs are being excluded from participation in, or being denied benefits of, a service, program, or activity—either voting broadly or voting by mail specifically—for which Defendants are responsible.[10]

---

[10] The allegations in Plaintiffs' complaint indicate, at times, that Plaintiffs' theory of the case is that voting by mail is itself a service, program, or activity under the ADA. They allege, for example, that "[v]oting by mail is a service, program, or activity provided by Defendants." ECF No. 1 ¶ 97. They further claim that "Defendants have excluded and continue to exclude Plaintiffs and other voters with print disabilities from participation in, and denied them the benefits of, or otherwise discriminated against them in, the service, program, or activity of voting by mail-in ballot." *Id.* ¶ 102. Elsewhere, however, they appear to suggest that the service, program, or activity at issue in this case is voting more generally and that voting by mail is, more precisely, a benefit of a service, program, or activity—one which, according to Plaintiffs, has been denied in violation of the ADA. For instance, they allege that "Defendants will not make the County's elections fully accessible to individuals with print disabilities, including Plaintiffs, who wish to exercise their right to vote by mail." *Id.* ¶ 84. Similarly, while Plaintiffs assert in their motion for a preliminary injunction that "[v]oting by mail is a program or service within the meaning of disability rights law[,]" ECF No. 3 at 16, they also rely on *Lamone*, which described the relevant issue in that case as one in which "defendants have provided such a *benefit* to non-disabled voters while denying that same *benefit* to plaintiffs on the basis of their disability." 813 F.3d at 506 (emphasis added). Nevertheless, whether voting by mail, as discussed in this case, constitutes a service, program, activity, or benefit thereof is, at this stage of the proceedings, a distinction without a difference. Defendants,

The third element asks whether Ms. Callanen and Bexar County excluded, denied benefits, or discriminated against Plaintiffs because of their disabilities. Federal regulations proscribe a public entity from affording "a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" 28 C.F.R. § 35.130(b)(1)(ii). Federal regulations also make clear that a public entity may not provide "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" *Id.* § 35.130(b)(1)(iii).

It therefore follows that a "public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1). "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2). Auxiliary aids and services include "screen reader software; magnification software; optical readers; secondary auditor programs (SAP); large print materials, accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision[.]" *Id.* § 35.104.

Plaintiffs allege that Bexar County's paper mail-in voting system is inaccessible to them. *See* ECF No. 1 ¶¶ 51–57. They assert that Defendants have refused to provide them with "auxiliary aids and services, such as accessible format electronic ballots, necessary to afford them effective communication in the mail-in voting process." *Id.* ¶ 101. Plaintiffs further submit that Defendants'

---

for their part, do not dispute Plaintiffs' assertions. Thus, in resolving Defendants' Rule 12(b)(6) motion to dismiss, the Court, assumes, but does not decide, that voting by mail is a service, program, activity, or benefit thereof.

11

refusal deprives them of their right, under Texas law, to vote by mail in secret and free from intimidation. *Id.* ¶ 1. By contrast, Plaintiffs allege, "other vote-by-mail eligible voters may cast their votes by mail-in ballot secretly, privately and independently[.]" *Id.* ¶ 11. In their words:

> [A] sighted individual in Bexar County who does not have a disability that prevents him from filling out a ballot, and who qualifies for vote-by-mail voting, may vote independently and privately without having to travel to a polling place on Election Day. By contrast, blind individuals and individuals with print disabilities in Bexar County cannot vote secretly, independently and privately by mail-in ballot. The process of marking and casting a vote through a mail-in ballot is completely inaccessible.

*Id.* ¶¶ 51–52. Given their physical inability to complete and submit a paper mail-in ballot, Plaintiffs allege that Defendants have failed to provide them "with an opportunity to vote by mail-in ballot that is equal to the opportunity provided to other voters that do not have disabilities." *Id.* ¶ 99. These allegations sufficiently show at the pleading stage that Plaintiffs were excluded from voting by mail or denied the benefit of voting by mail because of their disabilities.

Plaintiffs also satisfy the third element for a *prima facie* case of discrimination under Title II of the ADA on a theory of "failure to accommodate." The ADA imposes "upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citing 42 U.S.C. § 12131(2)). "For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Cadena*, 946 F.3d at 724. "A plaintiff's requested accommodation must also be 'reasonable,' meaning that it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program, or activity.'" *Id.* (quoting 28 C.F.R. § 35.130(b)(7)(i)).

Plaintiffs allege that, before filing this action, Mr. Johnson spoke and corresponded with Ms. Callanen on multiple occasions. In doing so, he explained his visual impairment and requested an accommodation to vote by mail privately and independently without assistance. *See* ECF No. 1 ¶¶ 69–72, 75. Ms. Callanen, according to Plaintiffs, acknowledged Mr. Johnson's request for an accommodation and attempted to obtain guidance from the Secretary. *Id.* ¶¶ 69, 73. In addition, Plaintiffs submit that Disability Rights Texas sent two demand letters to Bexar County on behalf of NFB-TX, CTD, and Mr. Johnson. *Id.* ¶ 77. The first of these demand letters clearly stated, as Plaintiffs allege, that "the current vote-by-mail process in Bexar County discriminates against voters with disabilities" in violation of Title II of the ADA. ECF No. 1-2 at 2.

Moreover, Plaintiffs allege that Ms. Callanen told Mr. Johnson that she believed that the electronic system Bexar County provides to active military and overseas eligible voters to vote by mail might be a suitable alternative for him. ECF No. 1 ¶ 69. They assert that Ms. Callanen sent Mr. Johnson a copy of an electronic ballot and that "Mr. Johnson found it to be accessible using his screen reader technology." *Id.* ¶ 70. These allegations sufficiently show at the pleading stage that Defendants knew of Plaintiffs' disabilities and their consequential limitations and that Plaintiffs requested a reasonable accommodation.

Defendants argue that "Plaintiffs do not like the practical and effective accommodation made by law but instead seek a different accommodation." ECF No. 13 ¶ 9. They cite to section 61.012 of the Election Code, suggesting that the accommodations Defendants believe are sufficiently practical and effective are those that facilitate a disabled individual's opportunity to vote in person.[11] *Id.* ¶ 8. But the harm that Plaintiffs allege in this case concerns their opportunity to vote by mail, not in person. They seek to vote privately and independently without assistance,

---

[11] Section 61.012 of the Election Code states that "each polling place must provide at least one voting station that" complies with certain federal laws, including the ADA. *See* TEX. ELEC. CODE § 61.012.

like sighted active military or overseas individuals who are eligible to vote by mail. Therefore, Defendants' argument that a reasonable accommodation already exists simply because Plaintiffs may instead vote in person misses the mark.

Defendants also ask the Court to dismiss Plaintiffs' claims because the Election Code does not authorize Ms. Callanen or Bexar County to provide, as Plaintiffs request, an electronic system to vote by mail. *Id.* ¶¶ 4–7. Even if that were true, however, the fact remains that Plaintiffs seek relief because, they allege, federal law requires Defendants to provide a means by which visually impaired and otherwise disabled eligible voters can complete and submit a mail-in ballot on their own, notwithstanding their disabilities.[12] If the Election Code conflicts with Title II of the ADA, then federal law would preempt state law. *See Arizona v. United States*, 567 U.S. 387, 399 (2012) ("[S]tate laws are preempted when they conflict with federal law.").

Thus, the Court finds that Plaintiffs have stated a plausible claim upon which relief may be granted under Title II of the ADA.

### B. Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The language of Title II of the ADA generally tracks the language of § 504 of the Rehabilitation Act; thus, the remedies, procedures, and rights available under each are generally the same. *Melton*, 391 F.3d at 676.

---

[12] What is more, the Secretary has made clear in prior litigation that she lacks the authority to grant the relief Plaintiffs seek in this case. *See* Mot. to Dismiss, *Semien*, No. 1:20-CV-0789-LY, ECF No. 19 at 8. According to the Secretary, local election officials "administer Texas elections in general and voting by mail in particular." *Id.* at 11. The Secretary has also asserted that "Bexar County has an independent obligation to follow the Texas Election Code. And it will not send such ballots unless ordered to do so by the Court." Resp., *Semien*, No. 1:20-CV-0789-LY, ECF No. 26 at 5 (citations omitted).

14

One distinction, however, is "that to state a § 504 claim a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Lightbourn*, 118 F.3d at 427. Plaintiffs in this case broadly allege that Bexar County receives federal financial assistance. ECF No. 1 ¶¶ 111, 116. But they make no such allegation with respect to Ms. Callanen. *See Lightbourn*, 118 F.3d at 427 ("Certainly, a plaintiff may not predicate a § 504 claim against a state actor on the mere fact that the state itself obtains federal money."). Nor do they allege that Bexar County receives federal financial assistance for its Elections Department. *Cf. Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015) ("The Department is a specific 'program or activity' within the meaning of the Rehabilitation Act."). Moreover, there is no allegation that Defendants receive or directly benefit from federal financial assistance in connection with the administration of elections generally or voting by mail specifically. Plaintiffs, therefore, have failed to state a claim upon which relief may be granted under § 504 of the Rehabilitation Act.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 13) is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claim under Title II of the ADA may proceed. Plaintiffs' claim under § 504 of the Rehabilitation Act is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file an amended complaint if they believe that they can allege, in good faith, sufficient facts to state a plausible claim under § 504 of the Rehabilitation Act.

It is so **ORDERED**.

**SIGNED** this June 21, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE