IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LARRY JOHNSON, WENDY WALKER, AMELIA PELLICCIOTTI; <br><br> NATIONAL FEDERATION OF THE BLIND OF TEXAS; and <br><br> THE COALITION OF TEXANS WITH DISABILITIES, <br><br> Plaintiffs, <br><br> vs. <br><br> JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; and BEXAR COUNTY, TEXAS, <br><br> Defendants. | Civil Action No. 5:22-cv-409-XR |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants acknowledge that this Court can compel them to make absentee voting accessible to blind and print-disabled voters but continue to try to wield the Texas Election Code as a shield to all claims in this litigation. They ignore the Supremacy Clause, which provides that the federal Americans with Disabilities Act ("ADA") preempts any contrary state law. Instead, they attempt to shoehorn the theoretical threat of litigation by the State into an affirmative defense that they did not plead, that is unsupported by the case law they cite and that is ultimately irrelevant to the question of their obligations under the ADA. This Court has the power to enforce the effective communication mandate of the ADA even where state law

1

conflicts and Defendants point to no material dispute of fact regarding this requirement or their practical ability to comply with it.

## STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *RBII, L.P. City of San Antonio*, Civil Action No. SA-09-CV-119-XR, 2010 WL 3516180 at * 3 (W.D. Tex. Sept. 3, 2010) (J. Rodriguez).

## ARGUMENT

**I.    The Supremacy Clause preempts any contrary Texas Election Code requirement.**

Defendants continue to rely on their only argument that "[t]he Texas Election Code does not provide the accommodation that the Plaintiffs are seeking." ECF No. 49, Defs' Mot. at ¶ 17. The Supremacy Clause defeats this argument outright.

Plaintiffs are not seeking relief under the Texas Election Code. They brought a federal civil rights lawsuit to compel Bexar County and its election officials to comply with their independent obligation under Title II of the ADA to provide mail-in ballots that are as accessible to blind and print-disabled voters as they are to non-disabled voters. ECF No. 48, Pltf's Mot. at 5. Defendants even *agree* that this Court may order them to comply with this requirement of the ADA,[1] ECF No. 49, Defs' Mot. at ¶ 12, and, citing to *Arizona v. United States*, 567 U.S. 387,

---

[1] Defendants point to other states that have provided accessible ballots to argue that such a change would require legislatively amending the Texas Election Code. *See* ECF 49, Defs.' Mot.

2

399 (2012), this Court has already made clear that if the Texas Election Code conflicts with those requirements, federal law governs. ECF No. 20, Order on Def's Mot. to Dismiss at 14 ("If the [Texas] Election Code conflicts with Title II of the ADA, then federal law would preempt state law.").

The issue is not whether Defendants have the authority to provide accessible ballots under state law. ECF No. 49 at ¶ 12. Instead, the issue is whether "compliance with both state and federal law is impossible" (Defendants argue that it is, *see generally* ECF No. 49 at ¶¶ 13- 16). *Aldridge v. Mississippi Dep't of Corr.s*, 990 F.3d 868, 875 (5th Cir. 2021) (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 100-01 (1989) (internal quotation marks omitted). . This includes compliance with federal regulations, which "have no less pre-emptive effect than

---

Summ. J. at ¶¶ 18-19 ("A review of these states will indicate that certain states have passed legislation to provide this accessibility"). To the contrary, review of these states shows that most expanded access in response to a court decision or settlement agreement, without any need for a change in state law: *See, e.g. Nat'l Fed'n. of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) (Court Decision); *Powell v. Benson*, No. 20-11023 (E.D. Mich. May 19, 2020), ECF No. 31 (Consent Decree); *Frye v. Gardner*, 20-cv-00751-SM (D. N.H. Oct. 6, 2021) ECF No. 68-1 (Settlement Agreement); *Hernandez v. New York State Bd. of Elections*, No. 1:20-cv-4003, 2022 WL 1025426 (S.D.N.Y. Apr. 5, 2022) (Court Decision); *Taliaferro v. North Carolina State Bd. of Elections*, 489 F. Supp.3d 433 (E.D. N.C. 2020) (Court Decision); *Drenth v. Boockvar*, No. 1:20-CV-00829, 2020 WL 4805621 (M.D. Pa. Aug. 18, 2020) (Court Decision); *Gary v. Virginia Dep't of Elections*, No. 1:20-cv-860-CMH-TCB (E.D. Va. Apr. 14, 2021) ECF No. 43-1 (Consent Decree). One state expanded accessibility via a directive from the Secretary of State after a successful lawsuit. *See* Jon Husted, *Directive 2018-03: Availability of a Remote Ballot Marking System for Use by a Voter with a Disability During Ohio's By-Mail Absentee Voting Period* (2018), https://verifiedvoting.org/wp-content/uploads/2020/10/Ohio-Directive-re-Remote-Ballot-Marking-Systems.pdf. Two states voluntarily did so after discussion with plaintiff organizations, including the National Federation of the Blind. *See* Press Release, Nat'l Fed'n of the Blind, Minnesota Agrees to Provide Accessible Absentee Voting Option for Blind Voters (Oct. 22, 2020), https://nfb.org/about-us/press-room/minnesota-agrees-provide-accessible-absentee-voting-option-blind-voters; Press Release, Delaware Dep't of Elections, Accessible Voting Available for July 7th Presidential Primary (July 1, 2020), https://news.delaware.gov/2020/07/01/accessible-voting-available-for-july-7th-presidential-primary/.

federal statutes." *Matter of Cajun Elec. Power Co-Op, Inc.*, 109 F.3d 248, 254 (5th Cir. 1997) (citing *City of New York v. F.C.C.*, 486 U.S. 57, 63 (1988)).

If, as Defendants contend, contrary state laws superseded the ADA, "the ADA would be powerless to work any reasonable modification in any requirement imposed by state law, no matter how trivial the requirement and no matter how minimal the costs of doing so." *Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013). It would also obviate public entities' "affirmative obligation to make reasonable accommodations for disabled individuals" under Title II. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 n.11 (5th Cir. 2005). And if provisions of the Texas Election Code "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" through its enactment of the ADA, those conflicting provisions are "nullified by the Supremacy Clause." *See Aldridge*, 990 F.3d at 875 (internal citations omitted). "[T]he mere fact of a state statutory requirement" cannot insulate Defendants from Title II liability as a matter of law. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 508 (4th Cir. 2016).

The Supremacy Clause does not operate merely to preempt the Texas Election Code with respect to Bexar County and this Court. It also preempts state law with respect to the State, the Texas Attorney General, the state courts, and other federal courts. Defendants' Motion does not contend with the Supremacy Clause and because the Supremacy Clause controls, Defendants' Motion must be denied.

## II. Defendants have waived any undue burden or fundamental alteration defense.

Defendants argue only that accessible electronic mail-in ballots are not a reasonable accommodation because they are not provided for in the Texas Election Code and could subject Defendants to litigation by the State of Texas. *See* Defs.' Mot. at ¶¶ 25, 28, 35. This is not a basis for finding that the requested relief would create a fundamental alteration to or undue burden on

the County elections, which *was* the defense available to Defendants as a public entity resisting compliance with the effective communication requirement. 28 C.F.R. § 35.160(a)(1) ("A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others"). Defendants have not pleaded the affirmative defenses of undue burden or fundamental alteration. ECF No. 33 at ¶ 146-149 (pleading four affirmative defenses: 1) "Counties are entities of limited jurisdiction"; 2) "The Secretary of State is the chief election Officer"; 3) "There is no legal authority under Texas Election law for Defendants to mail ballots by electronic means to the Plaintiffs"; 4) Sovereign Immunity). Therefore, Defendants have waived those affirmative defenses. Fed. R. Civ. P. 8(c).

As this Court has already found, Defendants must "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others" in the context of voting. ECF No. 22, Order Den. Pls' Mot. Prelim. Inj. 12 (quoting 28 C.F.R. § 35.160(a)(1)). And while a public entity may be excused from this "effective communication" obligation if it can demonstrate that complying "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens[,]" 28 C.F.R. § 35.164, Defendants have waived those defenses by failing to plead them.

Defendants' discovery responses also explicitly conceded that they were "not arguing that Plaintiffs' request is an 'undue burden or fundamental alteration.'" ECF No. 48, Ex. 4, Def's Written Responses to Pltf's First Set Interrogatories, Response No. 16. Defendants further stipulated that they have the ability, **without undue burden**, to make electronic ballots available to blind and print-disabled voters, ECF No. 34, Stip. ¶¶ 16-18. Having refused to provide any

evidence in discovery as to the defenses of undue burden and fundamental alteration, it would be highly prejudicial to Plaintiffs to allow Defendants to assert the defenses at this late date after discovery has closed. *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019).

### III. Defendants cannot demonstrate an undue burden or fundamental alteration.

Even if this Court allowed Defendants to pursue a fundamental alteration or undue burden affirmative defense at this late stage, they cannot point to any facts that support their burden of proving it and summary judgment for Plaintiffs is still appropriate where they cannot, as a matter of law, carry that burden. 28 C.F.R. § 35.164 ("[W]here personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens").[2]

Unable to prove undue burden or fundamental alteration as a matter of law, Defendants try to shift the burden to Plaintiffs by arguing that the "accommodation" Plaintiffs seek is not "reasonable." While reasonable modification of policies, practices or procedures is one requirement of Title II of the ADA, 28 C.F.R. § 35.130(b)(7), the requirement applicable to the current case is the "effective communication" requirement, under which a public entity must ensure its communications with people with disabilities are as effective as its communications with people without disabilities. 28 C.F.R. § 35.160.

---

[2] That the County failed to provide accessible ballots to Individual Plaintiffs during the last election, ECF No. 49 at ¶ 7, based on their own misunderstanding of whether the MOVE Edge ballots were accessible, is not dispositive of their ability to do so going forward, given that they now understand what providing those ballots would entail, Ex. 1, Callanen Dep. at 177:15-180:19, and agreed that the County was willing to pursue their options for making that happen (absent Texas law). ECF No. 48, Ex. 2, Callanen Dep. at 196:16-199:10; *see also* ECF No. 48, Ex. 3 Expert Report of Kennedy Zimnik ("Zimnik Report") at 5-7 (describing process for remediating current ballots).

Even assuming the reasonable modification requirement were applicable, Plaintiffs have met their light burden to show that providing accessible electronic ballots is reasonable. In *Johnson v. Gambrinus Co./Spoetzl Brewery*, the Fifth Circuit stated:

> The plaintiff meets [its reasonable modification] burden by introducing evidence that the requested modification is *reasonable in the general sense, that is, reasonable in the run of cases* . . . If the plaintiff meets this burden, the defendant must make the requested modification unless the defendant pleads and meets its burden of proving that the requested modification would fundamentally alter the nature of the public accommodation.

116 F.3d 1052, 1059-60 (5th Cir. 1997) (emphasis added). The fact that Defendants already offer electronic ballots to military and overseas voters demonstrates that it is reasonable to do so. *See Lamone*, 813 F.3d at 508. (noting that a prior implementation of a non-accessible version of the online ballot marking tool without issue "speaks to the reasonableness of using the tool"). The fact that numerous states already provide accessible electronic ballots to people with print disabilities also demonstrates that doing so is reasonable. *See* ECF No. 48, Ex. 1 Expert Report of Lou Ann Blake ("Blake Report") at 7-9; ECF 49, Defs.' Mot. at ¶¶ 18-19.

Contrary to their assertion, Defendants are not required to "create a new voting system" to comply with their Title II obligations. ECF No. 49 at ¶ 12. Defendants have agreed that the provision of accessible electronic ballots could map on to the electronic ballot delivery system the County already has in place. ECF No. 48, Ex. 2, Callanen Dep. at 196:15-197:15 (agreeing that the County could work with MOVE Edge to make the current electronic ballots accessible to screen readers, or, failing that, could hire a different vendor to make them accessible).

Notably, Defendants cite to no evidence, undisputed or otherwise, indicating that extending electronic absentee ballots to voters with print disabilities would be unreasonable. Despite previously admitting that it could make the electronic ballots it already provides accessible to those with visual and print disabilities, the County—for the first time—raises vague

security concerns as a barrier to implementation. ECF No. 49 at ¶ 8. Defendants provide no testimony or other evidence that any security concerns would arise from offering accessible electronic ballots. In fact, the current system used by the County, MOVE Edge, has already met all necessary security requirements. To the extent the County chooses to use a new vendor, the County can vet the new vendor using the same process it used to vet and approve MOVE Edge.

Similarly, the County provides no evidence that it could not easily determine who would be entitled to vote using an accessible electronic ballot, ECF No. 49 at ¶¶ 9-10. As other jurisdictions have done, Bexar County can require voters requesting accessible ballots to attest, under penalty of perjury and/or election fraud penalties, that they have print disabilities that prevent them from being able to independently complete a paper absentee ballot. *See, e.g.*, Ex. 2, Stipulation and Consent Order, *Powell v. Benson*, No. 2:20-cv-11023-GAD-MJH, ECF No. 24 at ¶¶ 1-4 (May 1, 2020). The self-imposed need to create a bureaucratic process for requesting reasonable accommodations cannot be a basis for failing to comply with the reasonable accommodation requirement of the ADA.

Finally, the speculative threat of litigation by the State of Texas against the County for complying with a lawful order of this Court under Title II of the ADA is not evidence of a fundamental alteration or undue burden, nor does that speculative threat create an unidentified standalone affirmative defense that precludes summary judgment in Plaintiffs' favor.  None of the cases Defendants cited support the proposition that the speculative threat of litigation makes accessible ballots an unreasonable accommodation. And none of the cases Defendants cite are remotely factually similar to this one; not one involved vindicating a federal right, the application of the Supremacy Clause to resolve a conflict between state and federal law, or parties being sued over their compliance with a lawful, federal court order.

Only one of the three cases was against an election official, *State v. Hollins*, 620 S.W.3d 400, (Tex. 2020), and that was an *ultra vires* action by the State to enjoin the Harris County Clerk from, on his own initiative, mass mailing mail-in ballot applications to all registered Harris County voters under age 65. *Id.* at 404-405. The Texas Supreme Court found the clerk was acting *ultra vires* by disregarding the Texas Election Code's mandate that qualified voters must request mail-in ballots. *Id.* (citing Texas Election Code Sec. 84.012). Unlike the present case, Harris County pointed to no other legal basis (*i.e.*, federal law) for mass mailing the ballots. *Id.* at 407.

The other two cases Defendants cite as evidence of the threat of litigation by the State are equally unhelpful to them. In *Abbott v. City of San Antonio*, 648 S.W.3d 498 (Tex. App.—San Antonio 2021, pet. granted), the State did not, "su[e] Bexar County for exceeding its authority . . . ." ECF No. 49 at ¶ 23. Rather, the City of San Antonio and Bexar County sued the governor, seeking a declaratory judgment that the governor's COVID-19 executive order (GA-38) exceeded his authority under the Texas Disaster Act of 1975. *Abbott*, 648 S.W.3d at 503. And in *State v. Stephens*, Nos. PD-1032-20, PD-1033-20, 2021, 2021 WL 5917198 (Crim. App. Dec. 15, 2021)—which Defendants argue establishes that Defendant Callanen could have been subject to criminal prosecution, ECF No. 49 at ¶ 33—arguably now stands for the opposite proposition: there the Texas Criminal Court of Appeals held that the Attorney General had no independent authority to bring criminal prosecutions under the Texas Election Code, and that the grant of prosecutorial authority to the Attorney General under section 273.021 of the Election Code violated the Separation of Powers Clause of the Texas Constitution. *Id*. at *9-11.[3] Thus the only

---

[3] As to the threat of civil penalties, ECF No. 49 at ¶¶ 26-27, Defendants provide no citations to support the proposition that the Attorney General has the legal authority to do so under Texas law, let alone that the Attorney General has the authority to do so where a county official is

prospective significance of *Stephens* is that the Texas Attorney General lacks the authority to criminally prosecute county elections officials under the Texas Election Code. It does not establish that compliance with this Court's order under the ADA would subject Defendant Callanen to criminal prosecution or that ordering such relief would work a fundamental alteration to or an undue burden on the County's elections system.

**IV.     Bexar County provides no evidence that it does not receive federal funding**

Defendants seek dismissal of Plaintiffs' Section 504 claims, arguing that Plaintiffs have not proven that Bexar County receives federal funding. However, Plaintiffs have sufficiently alleged, and provided evidence in their Amended Complaint, that Bexar County does receive federal funding, including a portion of the State's $4 million of HAVA funding for 2022. In order to be granted summary judgment, Defendants must show that the undisputed facts show that it *does not receive any federal funding*. Defendant's brief does not even attempt to make such a claim, let alone provide evidence to support it. Presumably, if the County actually did not receive any federal funding, Ms. Callanen or another witness could have submitted a declaration so stating. But no one has done so.

---

compelled to act by federal law. Texas courts have not identified anyone who is "statutorily tasked with enforce[ment]" of the provision of the Texas Election Code subjecting an election official who violates a provision of that code to civil liability. *Paxton v. Longoria*, 22-0224, 2022 WL 2080867, at *6 (Tex. June 10, 2022). In fact, in *Longoria*, the Attorney General stipulated that he was not the proper official to enforce the civil penalties provision with respect to the plaintiffs in that case—one of whom was a county elections administrator like Defendant Callanen. *Id.* at *2, *7; *see also Longoria v.* Paxton, No. 22-50110, 2022 WL 2208519 at *1 (5th Cir. 2022) (citing *Longoria*, 2022 WL 2080867, at *7) ("The Texas Supreme Court also held, as to this case, that [the Texas Attorney General] lacks authority to enforce the civil liability provision"). Moreover, the Fifth Circuit, citing the Texas Supreme Court, has concluded that as applied to a county elections administrator, the Attorney General did not have enforcement authority of the Election Code's civil liability provision.

V.  **Summary judgment regarding damages would be inappropriate.**

Finally, Defendants argue that the decision in *Cummings v. Premier Rehab Keller, P.L.L.C.,* 142 S. Ct. 1562 (2022), prevents an award of damages under Title II of the ADA. *Cummings* was a Section 504 case in which the Court held that emotional distress damages were not recoverable in cases brought under statutes enacted pursuant to Congress' constitutional Spending Clause authority. Title II, unlike Section 504, is not a Spending Clause statute. Therefore, the reasoning of *Cummings*—that Spending Clause statutes are contractual by nature and, therefore, limited to contract remedies—does not apply to Title II. *Id.* at 1570-71. The Supreme Court's *Cummings* opinion was thus limited to "the Spending Clause statutes we consider here." *Id*. at 1576. In addition, unlike Section 504 and the other Spending Clause statutes, Title II provides an express private right of action. *Id.* at 1569.

In addition, Plaintiffs in this action are not merely seeking emotional distress damages. In *Cummings*, the plaintiff sought compensation for her "humiliation, frustration, and emotional distress." *Id.* To the contrary, Defendants' requirement that Plaintiffs either vote in person or vote with assistance caused other consequential damages that would be recoverable even under *Cummings*. For example, time spent traveling to and from the polls, time spent waiting in line, and transportation costs would all be recoverable for those who were forced to vote in person. For those who were forced to rely on a third party to vote absentee, any costs to compensate the third party would be compensable. *See Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, Case No. 3:20-CV-11-MAB, 2023 WL 348320 at *2 (S.D. Ill. Jan. 20, 2023) (economic losses recoverable). In addition, the invasion of privacy is more than an emotional harm. Plaintiffs will prove these damages at trial. *See Montgomery v. District of Columbia*, Civil Action No. 18-1928 (JDB), 2022 WL 1618741 at *23-24 (D.D.C.  May, 23, 2022) (finding that suffering greater "injury or indignity" than nondisabled persons is compensable); *Chaitram v. Penn Medicine-*

*Princeton Medical Ctr.*, Civil Action No. 21-17583 (MAS) (TJB), 2022 WL 16821692 at *2 (D.N.J. Nov. 8, 2022) (loss of opportunity, dignitary harm, and expectation damages are compensable).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court Deny Defendants' Motion for Summary Judgment.

/s/ *Lucia Romano*
LUCIA ROMANO
Texas State Bar No. 24033013
**Disability Rights Texas**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
Email: lromano@drtx.org

EVE L. HILL*
LAUREN J. KELLEHER*
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
Email: ehill@browngold.com
Email: lkelleher@browngold.com

/s/ *Michael T. Murphy*
MICHAEL T. MURPHY
Texas State Bar No. 24051098
RACHEL E. THOMPSON
Texas State Bar No.
KATHERINE A. PRESTON*
Texas State Bar No. 24088255
WILLIAM M. LOGAN*
Texas State Bar No. 24106214
Winston & Strawn LLP
800 Capitol Street, Suite 2400

Houston, TX 77002
(713) 651-2600
(713) 651-2700
Email: mtmurphy@winston.com
Email: rthompson@winston.com
Email: kpreston@winston.com
Email: wlogan@winston.com

*Admitted *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

*/s/ Michael T. Murphy*
Michael T. Murphy