**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LARRY JOHNSON, WENDY WALKER, AMELIA PELLICCIOTTI, NATIONAL FEDERATION OF THE BLIND OF TEXAS, THE COALITION OF TEXANS WITH DISABILITIES, | § § § § § § | |
| *Plaintiffs* | § § | SA-22-CV-00409-XR |
| -vs- | § § § | |
| JACQUELYN F CALLANEN, IN HER OFFICIAL CAPACITY AS THE BEXAR COUNTY ELECTIONS ADMINISTRATOR; AND BEXAR COUNTY, TEXAS, | § § § § § § | |
| *Defendants* | § | |

## <u>ORDER</u>

On this day, the Court considered the above-captioned case. Before this Court is Plaintiffs'

motion for summary judgment (ECF No. 48), Defendants' response (ECF No. 51), and Plaintiffs'

reply (ECF No. 52), as well as Defendants' cross-motion for summary judgment (ECF No. 49),

and Plaintiffs' response (ECF No. 50). The Court has also reviewed Defendant's supplement to its

motion for summary judgment (ECF No. 55) and Plaintiffs' response (ECF No. 56). After careful

consideration, the Court issues the following order.

## I.     BACKGROUND[1]

All Texas voters have the right to "vote in secret and free from intimidation." TEX. ELEC.

CODE § 62.0115(b)(2). Additionally, some voters, including those with physical conditions

preventing them from voting in person, may vote absentee. *Id*. § 82.002(a)(1).[2] Together, these

---

[1] The following facts are undisputed unless otherwise noted.

[2] Chapter 82 of the Texas Election Code establishes eligibility for early voting. Qualified individuals include anyone with a "sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health." TEX. ELEC. CODE § 82.002 (a).

provisions establish that voting in secret by absentee ballot is a benefit that Texas guarantees for all qualified voters.

Regrettably, Texas, while affording all voters the right to vote in secret and free from intimidation and affording qualified voters the ability to vote absentee, has yet to clarify how blind and visually impaired voters can exercise both rights simultaneously under Texas law.[3] The Court recognizes that Bexar County has provided Plaintiffs with alternative means by which to vote, including voting in person or absentee (with assistance), but acknowledges that these solutions are imperfect and are not realistic for all visually impaired individuals. State legislatures across the country have affirmatively implemented electronic voting systems in recognition of the practical difficulties that blind, qualified voters face as they try to cast their absentee ballots in a secret fashion without help from another person. *See* ECF No. 35-1, Blake Decl. ¶ 8 (noting that accessible electronic alternatives to paper mail-in ballots are made available to disabled voters in Nevada, Maryland, Ohio, Michigan, New York, Pennsylvania, North Carolina, New Hampshire, California, Virginia, and elsewhere). Unfortunately, despite explicit requests for guidance from advocates for disabled citizens, Texas has thus far been unwilling to act to protect the ability of some of Texas's most vulnerable citizens to exercise their right to vote in secret.[4] *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943); *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 347 (Tex. App.—Texarkana 1999, no pet.) ("Privacy in casting one's ballot is a sacred rule of law in this state." (citing TEX. CONST. art. VI, § 4)). Its failure to do so has resulted in this litigation.

---

[3] As noted in Defendants' supplemental motion (ECF No. 55) H.B. 3159 passed both the Texas House of Representatives and the Senate but was vetoed by the Governor. *See* H.B. 3159, 88 Reg. Sess. (Tex. 2023).

[4] The Texas legislature has proposed several bills addressing voting accommodations for individuals with disabilities. *See* ECF No. 51 (citing HB 3159, HB 296/SB 477, HB 2776, and HB 2379). Most recently, H.B. 3159 passed both the Texas House of Representatives and the Senate but was vetoed by the Governor. *See* H.B. 3159, 88 Reg. Sess. (Tex. 2023).

On April 27, 2022, three visually impaired individuals and two nonprofit organizations composed of visually impaired and otherwise disabled Texans—all of whom are eligible to vote and want to vote absentee in secret and free from intimidation—sued Defendant Jacquelyn F. Callanen, in her official capacity as the Bexar County Elections Administrator, and Defendant Bexar County, Texas (together, "Defendants"). ECF No. 1. Plaintiffs Larry Johnson, Wendy Walker, and Amelia Pellicciotti ("Individual Plaintiffs") are registered voters in Bexar County, Texas, and are each eligible to vote by absentee ballot in Texas. The Individual Plaintiffs have disabilities as defined under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131 *et seq*. ECF No. 34, Stip. ¶¶ 2–4. The Individual Plaintiffs are blind and cannot read print. *Id.* ¶¶ 5–7.

The two organizational plaintiffs are the National Federation of the Blind of Texas ("NFB-TX") and the Coalition of Texans with Disabilities ("CTD") (together, the "Organizational Plaintiffs"). NFB-TX is a nonprofit organization which helps blind individuals integrate successfully with society. ECF No. 27 at 5. NFB-TX members include both blind individuals and their friends and family. *Id*. Plaintiff CTD is a nonprofit whose members are Texans with disabilities, their family, and friends. *Id*. CTD's goal is to help disabled Texans "work, live, learn, play, and participate fully in the community." *Id*. The Organizational Plaintiffs each have members who are registered to vote in Bexar County and are eligible to vote by mail because of their disabilities. *Id*. at 6.

The Individual Plaintiffs and members of the Organizational Plaintiffs assert that they cannot fully exercise their right to vote in secret because Bexar County's in-person and vote-by-mail systems are inaccessible. *See generally id*. In particular, in-person voting requires Plaintiffs to seek assistance from sighted friends, family members, or poll workers to complete the paper

ballots. Likewise, although Plaintiffs are eligible to vote by mail, they can neither apply for nor complete the mail-in ballots independently because both the application and the ballot itself are on paper. ECF No. 27 at 10; ECF No. 34, Stip. ¶ 8.

Accordingly, Plaintiffs sued under Title II of the ADA, and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "RA"), 29 U.S.C. §§ 791 *et seq*., seeking an injunction requiring Defendants to provide an accessible method of voting for blind and print-disabled voters.[5] ECF No. 27. Plaintiffs seek access to Bexar County's MOVE Edge system.

MOVE Edge is a web-based application that Bexar County implemented to comply with the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. §§ 20301 *et seq*., as amended by the Military and Overseas Voter Empowerment Act ("MOVE Act"), Pub. L. No. 111-84, Subtitle H, §§ 575–89, 123 Stat. 2190, 2318–35 (2009). The system provides military personnel with electronic ballots, is already in place, and has been approved by the Texas Secretary of State. ECF No. 34, Stip. ¶¶ 9–10.

To use MOVE Edge, eligible users first submit an application called the Federal Post Card Application ("FPCA") either by email or mail, where they register to vote and request an absentee ballot within the same document.[6] The FPCA allows voters to specify how they wish to receive their ballot—by mail, common or contract carrier, or email.[7]

---

[5] Plaintiffs use the term "blind" in its "broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access print," and "print disabilities" to refer to individuals who cannot complete a paper ballot for a variety of reasons, including blindness. ECF No. 27 at 2. The Court does not accept this definition. The Court uses the terms "blind" as one who has been found to be "legally blind." The Court otherwise determines that individuals with a vision impairment other than blindness must meet the Americans with Disabilities Act's definition of disability and establish that they are substantially limited in seeing. *See also infra*, n.10.

[6] *See* ECF No. 42 at 4 n.4; *see also* Bexar Cnty. Elections Dep't, *Military/Overseas Voters*, https://elections.bexar.org/1696/MilitaryOverseas-Voters (last visited May 17, 2023); *see also* Dep't of Defense, *Federal Voting Assistance Program—Texas*, https://www.fvap.gov/guide/chapter2/texas#election-offices (last visited July 6, 2022). The Court may take judicial notice of governmental websites. *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam).

[7] *See* Tex. Sec'y of State, *Military & Overseas Voters*, https://www.votetexas.gov/voting-by-mail/military-and-overseas-voters.html (last visited May 17, 2023). Although the government website indicates that voters may return

For electronic ballots, Bexar County first uploads the ballot to MOVE Edge. Then, the system creates a fillable PDF of the document which voters can access online using a personalized code. *Id*. ¶¶ 9–15; ECF No. 27 at 12. Once completed, the ballots are returned through the mail. ECF No. 49 at 3. If MOVE Edge ballots were "accessible," i.e., capable of being read and completed by assistive devices, Plaintiffs could access, complete, and submit their vote in private through the system.

On June 15, 2022, the Court heard argument on Plaintiffs' first request for injunctive relief. On July 7, 2022, the Court issued its order denying Plaintiffs' first motion for a preliminary injunction. *Johnson v. Callanen ("Johnson I")*, 610 F. Supp. 3d 907, 919 (W.D. Tex. 2022). In its order, the Court held that Title II of the ADA entitled Plaintiffs to request a reasonable modification that would allow them to vote on their own. *Id.* at 915–16. Plaintiffs failed, however, to establish that the only modification requested—affording blind or visually impaired voters the opportunity to vote using the MOVE Edge system—was reasonable. *Id.* at 917. Plaintiffs did not describe with specificity how the electronic voting system provided to military and overseas voters operated, and thus could not establish that blind or visually impaired voters could access, complete, and submit their electronic ballot privately and independently. *Id*. Because no evidence supported the reasonableness of the requested relief, Plaintiffs' motion for a preliminary injunction was denied. *Id.* Instead, the Court concluded that "[t]he request for a modification is best determined through a flexible, interactive process that involves both parties." *Id.* Once the parties had further engaged in this interactive process, Plaintiffs were granted leave to file a second motion for a preliminary injunction that fully explained whether and how the requested modification was reasonable. *Id.*

---

ballots by email, at oral argument on June 15, 2022, Defendants' counsel stated that mail-in ballots must also be printed, completed, and signed with a wet signature.

Under the Court's order, the parties attempted to engage in the interactive process. They discussed how the MOVE Edge system works and whether there were any available methods to provide accessible absentee ballots to voters with visually impaired disabilities. ECF No. 35-2, Blake Decl. ¶ 6. Defendants, however, maintained that they were unable to allow voters with visually impaired disabilities to use the MOVE Edge system or any other electronic ballot because Texas state law does not permit them to do so. *Id.*

On October 12, 2022, Plaintiffs again sought a preliminary injunction requiring Defendants to extend access to MOVE Edge to all visually impaired individuals in Bexar County or, alternatively, to the Individual Plaintiffs only. ECF Nos. 35, 41. The Court denied the motion for a preliminary injunction as it pertained to all visually impaired voters in Bexar County, concluding that a county-wide injunction would disserve the public interest. *Johnson v. Callanen ("Johnson II")*, No. SA-22-CV-00409-XR, 2022 WL 14069015, at *4 (W.D. Tex. Oct. 21, 2022). Specifically, the Court was concerned about altering the election system so close to the November 2022 election, especially because the parties had not agreed to any procedures for assessing eligibility to use the MOVE Edge system or how to notify eligible voters of the new program. *Id*.

On the other hand, the Court found that permitting only the Individual Plaintiffs to access the MOVE Edge ballot did not present the same issues, as to either eligibility or the voting process. For example, the Individual Plaintiffs' qualifying disabilities were not in dispute; the parties stipulated to the fact that the Individual Plaintiffs are blind and cannot read print. *Id*. at *7. Nor was there any need for pre-election publicity or risk of voter confusion, given that the only voters who were to be given accessible electronic ballots because of the injunction were, as active litigants in this case, familiar with the process for voting through the MOVE Edge system. The Court further concluded that access to the MOVE Edge system was a reasonable accommodation, and that the

Individual Plaintiffs otherwise faced a substantial threat of irreparable harm—the denial of the ability to vote independently—without relief. Thus, the Court ordered Defendants to grant the Individual Plaintiffs access to MOVE Edge ballots. *Id*. at *8.

On October 27, 2022, the Individual Plaintiffs submitted their applications to vote absentee. ECF No. 43. The next day, the Individual Plaintiffs were added to the MOVE Edge system. ECF No. 45-2. When they accessed the MOVE Edge ballots, however, the Individual Plaintiffs discovered that the ballots were "not readable."[8] ECF No. 45 at 2. To resolve the issue, Defendants emailed PDFs of the ballots directly to the Individual Plaintiffs. Unfortunately, these PDFs were not "fillable," so Plaintiffs could not mark their selections using their screen readers. *Id*. Consequently, the Individual Plaintiffs had to vote with assistance from friends and family. *Id*.

Plaintiffs now seek summary judgment on their ADA and RA claims. *See* ECF No. 48. Plaintiffs argue that Bexar County's current voting system deprives them of the ability to vote privately by absentee ballot, in violation of Texas law, as well as the ADA and RA. *See generally id.* Plaintiffs argue that non-visually impaired individuals residing overseas are allowed to vote by mail in secret and that they should be afforded the same opportunity. Plaintiffs further argue that Bexar County must provide accessible electronic ballots as a reasonable accommodation, either through MOVE Edge or another system. *Id*. Defendants respond that Texas state law does not authorize expanded access to MOVE Edge and that pending legislation renders the dispute moot.[9] ECF No. 51. Plaintiffs counter that any state-law limitations are superseded by federal law under the ADA and RA. *See generally* ECF No. 52.

---

[8] The parties previously stipulated that the electronic ballots provided through the MOVE Edge system were fillable PDFs that were accessible to screen reader software. ECF No. 34 at 2. In a later filing (ECF No. 45), Defendants contended that they merely relied upon Plaintiffs' assertion that their software would be able to "read" the ballots.

[9] In their motion to supplement their motion for summary judgment (ECF No. 58), Defendants direct the Court to H.B. No. 3159, which recently passed both houses of the Texas legislature. But as discussed *infra* Section III(A), the bill was vetoed by Governor Greg Abbott on June 17, 2023. *See* H.B. 3159, 88 Reg. Sess. (Tex. 2023).

Defendants filed a cross-motion for summary judgment, arguing that access to the MOVE Edge system is not a reasonable accommodation because, among other things, it exposes the County to litigation and state-imposed civil penalties. ECF No. 49. Bexar County also seeks summary judgment on Plaintiffs' Section 504 claim on the basis that Plaintiffs have not provided evidence that the County receives federal funds, as required under the Rehabilitation Act. *Id.*

## II.    LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Nor will a "scintilla of evidence" meet the nonmovant's burden. *Little*, 37 F.3d at 1075. Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . .

. that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

"On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

## III.    DISCUSSION[10]

Plaintiffs raise claims under both Title II of the ADA and Section 504 of the Rehabilitation Act. Title II of the ADA states that "no qualified individual with a disability shall, by reason of

---

[10] Plaintiffs seek relief on behalf of all blind and "print-disabled" voters, *see supra* n.4. The Court held a hearing on June 29, 2023, and determined that the term "print-disabled" was too vague and potentially exceeded the definition of "disability" provided for in the Americans with Disabilities Act. Therefore, the Court limits all relief to blind and visually impaired Texans, as defined by 42 U.S.C. §§ 12131 *et seq* and 28 C.F.R. § 35.108. The Court will use the terms "blind" and "visually impaired" interchangeably.

such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entities" include local governments. *Id*. § 12131(1)(A).

Similarly, Section 504 prohibits any "otherwise qualified individual with a disability in the United States" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," including any instrumentality of a local government. 29 U.S.C. § 794(a). The statutes have identical remedial schemes and are interpreted interchangeably. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

"To show a violation of either statute, a plaintiff must prove (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Id*.

"In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); 28 C.F.R. § 35.130(b)(1)(7)(i) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability."). Accommodations are not required, however, if "the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(1)(7)(i). The defendant bears the burden of demonstrating that the requested modification would fundamentally alter its service. *Id*.; *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). Otherwise,

"a public entity's failure to make a reasonable modification may satisfy the second and third prongs of the prima facia case." *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 618 (5th Cir. 2020).[11, 12]

## A.   Americans with Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities[.]" *Id.* § 12102(1)(A). A physical or mental impairment includes visual impairments. 28 C.F.R. § 35.108(b)(2). According to federal regulations, "seeing" is a major life activity under the ADA. *Id.* § 35.108(c)(1)(i). Further, Title II "defines 'public entities' to include local governments." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing 42 U.S.C. § 12131(1)(A)).

The Court now considers whether Plaintiffs have established a *prima facie* case of discrimination under Title II of the ADA. To do so, Plaintiffs must show:

> (1) that [they are] qualified individual[s] within the meaning of the ADA; (2) that [they are] being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or [are] otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [their] disability.

---

[11] In support of their motion for summary judgment, Plaintiffs offer (1) an expert report by Lou Ann Blake, Director of Research Programs and Blindness Initiatives at the National Federation of the Blind, ECF No. 48-1; (2) the deposition of Defendant Bexar County through its corporate representative Jacquelyn Callanen, ECF No. 48-2; (3) an expert report by Kennedy Zimnik, a Nonvisual Access Technology Specialist at the National Federation of the Blind, ECF No. 48-3; and (4) Bexar County Defendants' Responses to Plaintiffs' First Request for Interrogatories, ECF No. 48-4. Plaintiffs further incorporate (1) the parties' Stipulations, ECF No. 34; (2) Plaintiffs' Declarations, ECF No. 3-1; (3) statements made by the Texas Secretary of State in a separate lawsuit, *Semien v. Hughs*, No. 1:20-cv-00789-LY, ECF 19 (W.D. Tex. Aug. 25, 2020); and (4) Defendants' Answer, ECF No. 33.

[12] In support of their motion for summary judgment, Defendants reference (1) a web printout from VoteTexas.Gov, reflecting "Services Available to Voters with Disabilities in Texas," ECF No. 49-1; (2) Kennedy Zimnik's expert report, ECF No. 49-2; (3) a paper application for ballot by mail, ECF No. 49-3; (4) briefing in the case of *The State of Texas v. Chris Hollins, in his Official Capacity as Harris County Clerk* before the Texas Supreme Court, ECF Nos. 49-4 and 49-5; (5) an opinion in *State v. Stephens*, 663 S.W.3d 45 (2021), ECF Nos. 49-6 and 49-7.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)). "A public entity's failure to make a reasonable modification may satisfy the second and third prongs of the prima facia case." *Block*, 952 F.3d at 618.

First, as the Court previously concluded, Plaintiffs have properly invoked Title II of the ADA against a public entity in this case. *Johnson I*, 2022 WL 2541357, at *4. The Individual Plaintiffs, as well as many of NFB-TX's and CTD's members, are impaired in a manner that substantially limits one or more major life activities. *See* ECF No. 3-1, Johnson Decl. ¶¶ 2, 5; Walker Decl. ¶ 2; Pellicciotti Decl. ¶ 2; Crosby Decl. ¶¶ 4–5; Bearden Decl. ¶ 3. Accordingly, Plaintiffs and their disabled members are qualified individuals within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2). *Johnson I*, 610 F. Supp. 3d at 914; *see also* ECF No. 34, Stip. ¶ 1.

The second question is whether Plaintiffs are excluded from participating in a public activity. Plaintiffs are currently eligible to vote by absentee ballot. ECF No. 22 ¶ 7. They cannot do so privately and independently, however, because their visual impairments prevent them from completing and submitting on their own the paper mail-in ballot that Bexar County requires. ECF No. 3-1, Johnson Decl. ¶¶ 8, 21; Walker Decl. ¶¶ 6, 12–13; Pellicciotti Decl. ¶¶ 15, 17; Crosby Decl. ¶¶ 7, 13–16, 20; Bearden Decl. ¶¶ 6, 13. The inability to do so deprives Plaintiffs and their members of their right, under Texas law, to vote by absentee ballot in secret and free from intimidation. Tex. Elec. Code § 62.0115(b)(2).

Finally, because Plaintiffs and their members cannot complete and submit Bexar County's paper mail-in ballot on their own, they have been denied the benefit of voting privately and independently by absentee ballot because of their disabilities. Accordingly, they are being denied

an opportunity to vote absentee that is equal to the opportunity afforded to other eligible absentee voters. *Johnson I*, 610 F. Supp. 3d at 915–16. Plaintiffs have successfully made out a *prima facie* case of discrimination under the ADA and RA.

Plaintiffs are thus entitled to a reasonable accommodation that will allow them to vote by mail on their own, in secret, and without intimidation. *Johnson I*, 2022 WL 2541357, at *6. Plaintiffs need only show that their proposed accommodation "seems reasonable on its face, i.e., ordinarily or in the run of cases," or is "plausible" or "feasible" to implement. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). "The burden of production is not a heavy one and merely entails demonstrating the existence of a plausible accommodation 'the costs of which, facially, do not clearly exceed its benefits.'" *Coats v. Goodyear Tire & Rubber Co.*, No. H-01-1322, 2002 WL 32123913, at *18 (S.D. Tex. Oct. 16, 2002) (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 4 AD Cases 1264 (2d Cir. 1995)).

Once plaintiffs make this showing, the burden shifts and defendants are permitted to offer "special (typically case-specific) circumstances that demonstrate" the proposed accommodation is either a fundamental alteration of their service or constitutes an undue hardship. *Barnett*, 535 U.S. at 402. However, the fundamental alteration argument is an affirmative defense that defendants must proactively raise. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 607 (1999) (Stevens, J., concurring); *Reickenbacker v. Foster*, 274 F.3d 974, 983 (5th Cir. 2001) ("The burden of proof on this affirmative defense, of course, lies with the State . . ."); *Greer v. Richardson Indep. Sch. Dist.*, 472 F. App'x 287 (5th Cir. 2012).[13] Determining the reasonableness of a proposed modification is

---

[13] If defendants meet their burden of production, plaintiffs may "show that special circumstances warrant a finding that although the ADA may not trump in the run of cases[], the requested accommodation is reasonable on the particular facts." *Equal Emp. Opportunity Comm'n v. Methodist Hosps. of Dallas*, 62 F.4th 938, 944 (5th Cir. 2023). Because Defendants have waived the affirmative defense, *infra* Section III(A), the Court need not reach this analytical step.

generally fact specific. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012).

Plaintiffs have identified a proposed accommodation: access to MOVE Edge or a similar system. ECF No. 27 at 25. Plaintiffs' experts explain that Bexar County could easily tailor its existing system to accommodate blind voters; it does so seemingly without ramifications for current overseas citizens and military users. *See* ECF Nos. 48-1, 48-3; *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682-83 (2001) (finding accommodation reasonable when it did not alter an "essential aspect" of the program); *see generally Olmstead*, 527 U.S. 581 (holding that accommodation was unreasonable when it required public entity to divert resources from another program or user group). Moreover, Bexar County could modify MOVE Edge on its own, use a free non-commercial vendor, or hire an inexpensive commercial vendor. ECF No. 48-1 at 8 ("[R]emote ballot marking tools are available from several non-commercial sources such as Prime III and the Maryland State Board of Elections, both of which are free of charge."); *see also* ECF No. 48-3 ("[B]allots can be made accessible using a combination of Adobe tools and CommonLook tools provided by Allyant. CommonLook pdf remediation tools are available for $93.60 per user according to the CommonLook website.").

Alternatively, the County could purchase an existing "remote accessible vote-by-mail system," like those offered Democracy Live, Dominion Voting, Enhanced Voting, or Five Cedars. ECF No. 38 at 8. Several vendors also provide rapid implementation—some providing an accessible tool for an entire state within one week. *Id*.

At bottom, Plaintiffs' proposed accommodation is inexpensive, technologically simple, and can be implemented quickly. This proposition is reasonable on its face and feasible to implement. Plaintiffs have met their burden of production on this issue.

The ADA provides defendants with an affirmative defense to avoid implementing otherwise reasonable accommodations,[14] so long as the "modifications would *fundamentally alter the nature of the service, program, or activity*," 35 C.F.R. § 35.130(b)(7)(i) (emphasis added), or would cause an "undue hardship."[15] At no point in their answer or briefing do Defendants raise this affirmative defense. It is therefore waived.

Still, Defendants make five arguments in support of their position that the requested accommodation is unreasonable. *Little*, 952 F.2d at 847 (holding that moving party can succeed on summary judgment by negating the existence of a material element of the non-moving party's claim or defense). However, these arguments are unpersuasive.

First, although Defendants complain that modifying their current PDF ballots is too "complicated," the Court disagrees. Plaintiffs' expert report, written by Kennedy Zimnik, instructs readers on how to use commonly available features on Adobe to make any PDF accessible to

---

[14] The Court notes that the reasonable accommodation and fundamental alteration analysis are often conflated. *See Cadena*, 946 F.3d at 724 (defining a reasonable accommodation as one that "does not impose undue financial or administrative burdens or fundamentally alter the nature of the service, program, or activity"); *Coats*, 2002 WL 32123913, at *19 ("Defendant has the burden of showing that the proposed accommodation is unreasonable, which merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship."). However, combining these analyses oversimplifies the issue and ignores regulations and precedent that clearly delineate the parties' distinct burdens. *See* 28 C.F.R. § 35.130(b)(7)(i) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity*) (emphasis added); *see also Barnett*, 535 U.S. at 401–02 (finding that if plaintiffs meet the burden of establishing reasonableness, then defendants bear the burden of proving the accommodation would constitute a fundamental change to their program). Finally, the Court notes that the proposed accommodation cannot, as a logical matter, constitute a fundamental alteration of the County's voting system because Bexar County already offers electronic voting to a subset of Texas voters (service members). Nonetheless, because Defendants waived this issue, it bears no further discussion.

[15] Title II's regulations must be consistent with regulations promulgated under 29 U.S.C. § 794, i.e., the Rehabilitation Act. *See* 42 U.S.C. § 12134 (b). Accordingly, the ADA's reasonable accommodation regulations are premised upon the RA's parallel provision which reads: "A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 28 C.F.R. § 41.53. Thus, reasonable accommodations are required unless they would cause a fundamental alteration or undue hardship upon the public entity's program. *See* 28 C.F.R. § 35.130(b)(7); *id.* § 41.53.

screen readers. This report explains that the County could make its ballots accessible using a two-to-three step process. [16]

Similarly, Defendants argue that any "additional programing and equipment" raise "serious issues with computer security." ECF No. 49 at 4–5. It is unclear to the Court whether these "serious issues" relate to election integrity, the security of data generated and/or stored on computers belonging to Bexar County (or its voters), both, or neither. Indeed, it is unclear because Defendants have failed to describe with specificity the nature of these security issues, let alone proffer any evidence as to the likelihood of such issues or the cost of any measures to prevent or mitigate them. Indeed, Defendants' own motion suggests that the security of its existing system has already been evaluated because the MOVE Act required states to "take steps to ensure that electronic transmission procedures protect the security of the balloting process and the privacy of the identity and personal data of UOCAVA voters using the procedures." *Id.* at 3–4. Defendants' vague reference to "security" does not offer any meaningful insight into either of the Court's tasks at this juncture—evaluating whether Plaintiffs' accommodation is "reasonable" and whether the damage to Defendants resulting from the injunction is outweighed by the injury that Plaintiffs will suffer in its absence. Without evidence of the likelihood of a security threat and its expected costs, the

---

[16] *See* ECF No. 48-3. If the County creates its PDF ballots from Word documents, Zimnik recommends making the Word document accessible by "using appropriate headings, alternative text for images, tables with defined heading rows" which would make any exported PDF "90-95% accessible." *Id*. at 8. Once the ballots are in PDF form, they need to be made "readable" and "fillable" to be accessible.

To make a ballot readable, the County or its hired vendor would first "tag" all portions of the document and label those sections as headings, images, checkboxes, etc. *Id*. at 7. The tags appear in a "tag tree" within the document and the County must rearrange the tags so that the order in the tree corresponds with the order in which the screen reader reads the element. *Id*. Once the document has been fully tagged and the tags are organized, screen reading software can read the ballots out loud to users. Then, the document must be made "fillable" so that voters can select their preferred candidate. Adobe's "Prepare Form" tool will automatically create "Form Fields" within documents where selections are needed. The County can specify the type of form (textbox, check, etc.) and review the form fields for accuracy before publishing. *Id*. at 8. Once the ballots are readable and fillable, visually impaired individuals could complete the ballot using their keyboards "just as any electronic fillable form is marked on a computer." *Id*. at 7.

Court cannot countenance arguments that merely gesture toward threats to election or data security, real or imagined.

Third, Defendants argue that they lack the authority to expand access to MOVE Edge or to implement a substantially similar program. ECF No. 49 at 8 ("There is no authority for a county to expand the application of the Election Code for voters."); *id*. at 15 ("There is no provision in the Texas Election Code that allows an Election official to 'create' or 'expand' the law to provide a requested accommodation."). Relatedly, without citing any authority, Defendants maintain that expanding access would subject County officials to lawsuits and civil penalties. *Id*. at 14–15. Notwithstanding the questionable validity of the latter argument,[17] *see* ECF No. 42 at 14 n.6, these arguments fail for the simple reason that federal laws preempt state laws and regulations (or lack thereof). U.S. CONST., art. IV, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States . . .  shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Thus, Defendants' argument overlooks their obligation to comply with federal law which, in turn, requires Bexar County to provide reasonable accommodations.

Fourth, Defendants maintain that Plaintiffs "have had the opportunity to vote" and that the Texas Election Code, as is, includes "provisions and procedures for assisting disabled voters." ECF No. 49 at 2.[18] Defendants argue that Bexar County already provides a reasonable accommodation

---

[17] Setting aside the speculative nature of this argument, the Court observes as a practical matter that denying the requested injunction because the imposition of a new voting procedure might invite lawsuits would be especially bizarre in the context of this litigation, which is premised in its entirety on the *absence* of such a procedure. Indeed, if the potential for future litigation on the subject counseled against injunctive relief, nearly every civil rights claim would fail from the outset based on the mere possibility that someone, somewhere, might someday challenge any relief awarded by the court.

[18] Defendants cite to Texas Election Code § 43.034 (requiring the commissioners court to "provide a polling place" in compliance with accessibility standards for "the elderly and persons with physical disabilities," including ground-floor elevators, minimum door widths, curb cuts, or nonslip ramps, and handrails); *id*. § 64.031 (permitting those

that allows Plaintiffs to vote, albeit with assistance. *See* ECF No. 49 at 2 (stating that "Plaintiffs have had the opportunity to vote" and "Bexar County . . . provid[es] an accommodation to Disabled voters"). Defendants are correct that Plaintiffs can technically submit their ballot under Texas's current procedures. That said, this overlooks the Texas Election Code's guarantee that voters have the right to "vote in secret and free from intimidation." TEX. ELEC. CODE § 62.0115(b)(2). Because Plaintiffs require assistance to submit their ballots, they cannot vote absentee in secret under the current system. Texas's current "provisions and procedures" addressing disabled voters simply do not guarantee these voters the right to vote in secret by absentee ballot.

Finally, Defendants argue that this Court should stay its decision pending the outcome of several bills currently under review in the Texas Legislature, particularly H.B. 3159. *See generally* ECF Nos. 51, 55. The Court disagrees. First, proposed legislation does not moot a live controversy. Second, H.B. 3159 was vetoed by Governor Abbott and, as such, provides no relief. It is thus entirely speculative as to when any remedial legislation may be passed. Third, even if legislation is forthcoming, there are no assurances that it would comply with the ADA or provide an accessible voting system in time for the next election. *Veasey v. Abbott*, 248 F. Supp. 3d 833, 835 (S.D. Tex. 2017) (collecting cases for the proposition that "it is well-settled that new legislation does not ipso facto eliminate the discriminatory intent behind older legislation and moot a dispute regarding the violation of law."); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does

---

eligible for assistance to be assisted by "two election officers . . . each officer must be aligned with a different political party unless there are not two or more election officers serving the polling place who are aligned with different parties," or a person of the voter's choice); *id*. § 104.004 (permitting early voting upon application); and chapter 84, subchapter A (permitting application to vote early by mail, although the "application must be submitted in writing and signed by the applicant using ink on paper . . . electronic signature or photocopied signature is not permitted").

not deprive a federal court of its power to determine the legality of the practice.") (internal quotations omitted).

Defendants have raised no genuine dispute of material fact as to whether Plaintiffs have been denied a state benefit because of their disability. Nor have they negated the reasonableness of Plaintiffs' proposed accommodation. Accordingly, Plaintiffs' motion for summary judgment is granted as to the ADA claim.

### B.   Rehabilitation Act

Although the ADA and RA are generally interchangeable, *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020), the Rehabilitation Act only applies to "any program or activity receiving *Federal financial assistance*." 29 U.S.C. § 794(a) (emphasis added). In their amended complaint, Plaintiffs state that Bexar County "receives federal financial assistance for its voting program," and cite to the $24 million dollars that Texas received in supplemental "Help America Vote Act" assistance in 2020-2021. ECF No. 27 at 22. However, Defendants "deny that [Bexar County] currently receives federal financial assistance for it [sic] voting program" and argue that "Plaintiff [sic] has no proof of any federal funding received by Bexar County or Ms. Callanen concerning mail in ballots in the last three years or that Bexar County received HAVA funding during that time period." ECF Nos. 33 at 13, 49 at 20–21.

At the summary judgment stage, Plaintiffs offered no evidence to support their contention that Defendants receive federal funding. As a result, Plaintiffs have failed to carry their burden on this point. Defendants' motion for summary judgment is granted as to Plaintiffs' Rehabilitation Act claim.

## IV.   RELIEF SOUGHT

Plaintiffs seek injunctive relief and monetary damages. ECF No. 27 at 25.

### A.   Injunctive Relief

A party seeking a permanent injunction must prove: (1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021).

First, as explained above, *supra* Section III(A), Plaintiffs have succeeded on the merits of their ADA claim and have demonstrated that the Texas Election Code discriminates against blind voters, including Plaintiffs, because of their disability.

Second, failure to grant the injunction will likely result in Plaintiffs' inability to vote by absentee ballot in secret. Indeed, the Individual Plaintiffs were denied that opportunity in the November 2022 election and, without access to an electronic ballot, will be denied that opportunity yet again in the November 2023 election. "The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm." *Jones v. Governor of Fla*., 950 F.3d 795, 828 (11th Cir. 2020). "Courts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (collecting cases); *see also Purcell v. Gonzalez*, 549 U.S. 1, 7 (2006) (recognizing the "strong interest in exercising the fundamental political right to vote") (citing *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)). Access to a secret ballot to protect the right to vote freely is integral to Plaintiffs' right to vote under Texas law. *See In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d at 347. Voting in secret is an important defense against "voter intimidation and election fraud" and "necessary to cure electoral abuses." *Burson v. Freeman*, 504 U.S. 191, 206–07 (1992). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society and any restrictions on that right strike at the heart of representative

government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise." *Reynolds v. Sims,* 377 U.S. 533, 555 (1964).

Third, the injury to Plaintiffs outweighs any damage the injunction will cause Defendants. To begin, Plaintiffs clarified that the number of voters eligible to use an electronic voting system is limited to several hundred individuals. Hr'g. Tr. at 19:18–21.[19] Bexar County currently provides about 2,400 electronic MOVE Edge ballots per election. Therefore, providing access to this limited group presents a *de minimis* burden to the County.[20] Moreover, Plaintiffs have shown that Defendants can comply with this Order through minor and inexpensive (or free) modifications. Relatedly, this decision comes several months before the November 2023 election; because Plaintiffs have shown that commercial vendors can implement state-wide accessible voting platforms within several weeks, ECF No. 48-1 at 8 ("Enhanced Voting, for example, promises that in some cases, it can implement an accessible voting tool for an entire state in one week."), the Court is confident that Bexar County has ample time to comply with this Order.[21]

---

[19] During a hearing held on June 29, 2023, Plaintiffs' Counsel informed the Court that the number of individuals eligible for the relief sought is a "subset" of the 810 individuals who previously applied to vote absentee because of disability. *See* Hr'g Tr. at 19: 12–17; 20–16. Counsel estimated the number of eligible users would be "a much smaller group" than the 810 because "most disabilities are nonvisual nonprint disabilities." *Id.* 20: 10–12.

[20] The Court further notes that Plaintiffs propose voters attest to their disability when they apply for an electronic ballot. Plaintiffs recognize that wrongful claims of disability are subject to state laws regarding fraud and perjury. *See generally id.* at 18. The threat of criminal prosecution is likely to deter any wrongdoers from fraudulently claiming a disability to vote electronically.

[21] Lower courts must not implement changes to electoral systems too close in time to upcoming elections. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006). In recent history, the Supreme Court has upheld stays of injunctions entered days, weeks, and months before primary or general elections. *See Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28 (2020) (upholding Seventh Circuit's stay of injunction entered six weeks before the general election); *Raysor v. DeSantis*, 140 S. Ct. 2600 (2020) (upholding Eleventh Circuit's stay of injunction entered three months before primary election); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020) (staying preliminary injunction entered five days before primary election); *Veasey v. Perry*, 574 U.S. 951 (2014) (upholding stay of injunction entered 24 days before general election day). As such, the Court is cognizant of its responsibility not to cause confusion in established voting systems too close to an election date.

Finally, it is clear to the Court that this injunction "would serve the public interest by achieving the ADA's broad mandate to eliminate discrimination against disabled individuals." *Hernandez v. Roche*, No. EP-20-CV-00263-DCG, 2022 WL 4072963, at *5 (W.D. Tex. Sept. 2, 2022), *aff'd*, No. 22-50927, 2023 WL 2645548 (5th Cir. Mar. 27, 2023); *see also G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

Therefore, Plaintiffs' request for injunctive relief is granted, and Defendants are ordered to comply with the injunction as stated in the forthcoming judgment.

## B. Monetary Damages

Section 203 of the ADA, 42 U.S.C. § 12133, adopts all remedies provided in § 505(a)(2) of the Rehabilitation Act. Section 505(a)(2) of the Rehabilitation Act provides adopts all remedies set forth in Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 794(a)(2). Therefore, all remedies available under Title VII are available under the ADA. Because punitive damages and damages for emotional distress are unavailable under Title VII, they are likewise unavailable under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 186 (2002) (punitive damages); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1572, *reh'g denied*, 142 S. Ct. 2853 (2022) (emotional distress). Compensatory damages, however, are available upon a "showing of intentional discrimination." *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

The Individual Plaintiffs seek "an award of damages . . . for the violation of their right to vote secretly, privately, and independently." ECF No. 27 at 25. Defendants categorize this relief as one for emotional distress, which is unavailable under *Cummings*, 142 S. Ct. It is unnecessary to determine whether Plaintiffs seek compensatory or emotional distress damages, however,

because Plaintiffs have offered no evidence of intentional discrimination. This type of relief is, therefore, unavailable.

## V.    CONCLUSION

In conclusion, Plaintiffs' motion for summary judgment (ECF No. 48) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to Plaintiffs' claim under Title II of the ADA, 42 U.S.C. §§ 12131 *et seq*. Plaintiffs are entitled to a permanent injunction, the terms of which will be stated in the forthcoming final judgment. However, Plaintiffs' request for monetary damages under the Americans with Disabilities Act, 42 U.S.C. § 12133 is **DENIED.** Summary judgment is also **DENIED** as to Plaintiffs' claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Defendants' motion for summary judgment (ECF No. 49) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment as to Plaintiffs' ADA claim is **DENIED**; summary judgment as to Plaintiffs' Rehabilitation Act claim is **GRANTED** and this claim is **DISMISSED WITH PREJUDICE.** Should Plaintiffs seek recovery of attorneys' fees, they should file an application detailing and justifying the amounts requested and confer with Defendants regarding same. Plaintiffs may also file a Bill of Costs with the Clerk's office within the time specified by the Local Rules.

It is so **ORDERED**.

**SIGNED** this 6th day of July, 2023.

_____
Xavier Rodriguez
United States District Judge