**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LARRY JOHNSON, WENDY WALKER, AMELIA PELLICCIOTTI,  NATIONAL FEDERATION OF THE BLIND OF TEXAS,  THE COALITION OF TEXANS WITH DISABILITIES, | § § § § § § | |
| *Plaintiffs* | § § | SA-22-CV-00409-XR |
| -vs- | § | |
| JACQUELYN F CALLANEN, IN HER OFFICIAL CAPACITY AS THE BEXAR COUNTY ELECTIONS ADMINISTRATOR; AND  BEXAR COUNTY, TEXAS, | | |
| *Defendants* | | |

**ORDER**

On this date, the Court considered Plaintiffs' motion and application for attorneys' fees and costs (ECF No. 64), Defendants' response (ECF No. 66), and Plaintiffs' reply (ECF No. 68). After careful consideration, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

On April 27, 2022, Plaintiffs—three visually impaired individuals and two nonprofit organizations composed of visually impaired and otherwise disabled Texans—filed this suit against Defendant Jacquelyn F. Callanen, in her official capacity as the Bexar County Elections Administrator, and Defendant Bexar County, Texas (collectively, "Defendants"). ECF No. 1.

On February 28, 2023, Plaintiffs filed a motion for summary judgment on their claims arising under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131 *et seq.* and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "RA"), 29 U.S.C. §§

791 *et seq.* ECF No. 48. That same day, Defendants filed a cross-motion for summary judgment. ECF No. 49.

On July 6, 2023, the Court granted in part and denied in part Plaintiffs' motion for summary judgment. ECF No. 60. In relevant part, the Court granted Plaintiffs' motion with respect to their ADA claim as Defendants failed to raise a "genuine dispute of material fact as to whether Plaintiffs have been denied a state benefit because of their disability" and to "negate[] the reasonableness of Plaintiffs' proposed accommodation." ECF No. 60 at 19. The Court, however, denied Plaintiffs' motion with respect to their RA claim, holding that "Plaintiffs . . . failed to carry their burden on this point." *Id.* Thereafter, the Court issued a permanent injunction requiring, *inter alia*, Defendant to provide an electronic remote accessible vote-by-mail ("RAVBM") system for blind and visually impaired voters.

Plaintiffs now argue they are entitled to $332,816.75 in attorneys' fees. Further, Plaintiffs argue they are entitled to $8,729.83 in costs recoverable under 28 U.S.C. § 1920.

## DISCUSSION

### I.  Legal Standard

#### a.  *Attorneys' Fees Under the Americans with Disabilities Act*

Under the Americans with Disabilities Act ("ADA"), the Court has discretion to award attorneys' fees to the prevailing party. 42 U.S.C. § 12205. The Court may award fees where (1) the plaintiff achieved judicially-sanctioned relief, (2) the relief materially altered the legal relationship between the parties, and (3) the relief modified the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered. *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 576 (5th Cir. 2018) (quoting *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015)). Indeed, the presumption is that a prevailing party in an ADA case will

recover attorneys' fees "unless special circumstances would render such an award unjust." *Thomas v. Century 7909, LLC*, No. CV H-21-466, 2022 WL 3140499, at *1 (S.D. Tex. Aug. 4, 2022) (quoting *Shelton v. La. State*, 919 F.3d 325, 328 (5th Cir. 2019)); *see also Deutsh v. Jesus Becerra, Inc.*, 668 F. App'x 569, 571 (5th Cir. 2016).

Where attorneys' fees are warranted, the Court will determine the appropriate award amount by calculating the "lodestar," representing the number of hours reasonably spent on the litigation multiplied by a reasonable hourly billing rate. *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021). Thereafter, the Court will assess whether an upward or downward adjustment of the lodestar is appropriate based on the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Rodney*, 853 F. App'x at 924. The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the requisite skill to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–719.

## II.    Analysis

### a.  *Attorneys' Fees*

#### i.  Availability Under the ADA

Plaintiffs argue they are entitled to attorney's fees under the ADA after securing a permanent injunction from this Court, arguing that they meet the requisite three-part test put forth

3

in *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 576 (5th Cir. 2018). ECF No. 64 at 2–3. In response, Defendants contend that, because the degree of success obtained is an important factor in assessing attorney's fees, the appropriateness of attorney's fees in this case depends on the impact of this Court's injunction. ECF No. 68 at 2–3 (first citing *Farrar v. Hobby*, 506 U.S. 103, 114–15, 121 (1992); and then citing *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798 (5th Cir. 2002); and then citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001)).

Plaintiffs are prevailing parties under the three-part *Miraglia* test: (1) they obtained judicially sanctioned relief by securing a permanent injunction; (2) that injunction materially altered the relationship between Plaintiffs and Defendants, as Defendants are now legally required to offer Plaintiffs and other similarly situated parties an accessible vote-by-mail system pursuant to the injunction; and (3) this modification of Defendants' behavior benefited Plaintiffs by providing them access to the vote-by-mail system. *See* ECF No. 62.

To the extent that Defendants seek to read in an additional element to the *Miraglia* test, this Court declines to follow suit. To begin, the degree of success obtained is appropriately considered in adjusting the lodestar, not in determining whether attorneys' fees are appropriate under the ADA. *See Miraglia*, 901 F.3d at 577. Further, as Plaintiffs correctly point out in their reply, the Fifth Circuit has "repeatedly held that the *Farrar* circumstance of nominal but no compensatory damages only justifies a complete denial of fees when *monetary relief* is the primary objective of a lawsuit." *Grisham v. City of Fort Worth, Texas*, 837 F.3d 564, 569 (5th Cir. 2016) (emphasis added).

Here, it is undisputed that the primary objective of this litigation was the injunctive relief ordered by this Court—the fact Plaintiffs obtained no monetary relief in this matter is of no

consequence. In deciding ADA claims, other district courts in Texas have held an award of attorneys' fees to be proper on the basis of injunctive relief. *E.g.*, *Thomas v. Century 7909, LLC*, No. CV H-21-466, 2022 WL 3140499, at *1 (S.D. Tex. Aug. 4, 2022). Accordingly, the Court holds that Plaintiffs are prevailing parties under the ADA and are thus entitled to attorneys' fees.

ii.   Lodestar

Plaintiffs seek $332,816.75 in attorneys' fees based on (1) 552.2 hours of work performed by attorneys, paralegals, and law clerks at Brown Goldstein & Levy ("BGL"), (2) 121.5 hours of work performed by attorneys and paralegals at Disability Rights Texas ("DRT"), and (3) 50.3 hours of work performed by attorneys and paralegals at Winston & Strawn LLP ("W&S") billed at the customary rates for attorneys in Houston, Texas, and the national legal market. ECF No. 64 at 3–10. In reaching this amount, Plaintiffs submit various affidavits supporting the reasonableness of the hours expended on this litigation as well as their hourly rates. ECF No. 64-1; ECF No. 64-2; ECF No. 64-3; ECF No. 64-4. Defendants, however, contend Plaintiffs' fees are excessive given the complexity of the litigation and the Plaintiffs' attorneys' expertise in the matter, in addition to the fact that Plaintiffs rely on prevailing rates for the Houston, rather than the San Antonio, legal market. ECF No. 66 at 3–5.

1.   *Hours*

Plaintiffs seek to recover for 601.85 attorney hours and 122.15 paralegal and law clerk hours expended on this matter. For the most part, Defendants offer only general criticisms of the hours expended by Plaintiffs' attorneys. Defendants contend that they "do not understand why so many attorneys, paralegals and law clerks were needed for this case," noting that Defendants served no discovery and took no depositions. ECF No. 66 at 3–4. Moreover, Defendants argue "[t]his case was not complicated, novel or difficult." *Id.* But Defendants make no *specific*

arguments attacking the reasonableness of the hours expended by Plaintiffs' attorneys; Defendants challenge not a single time entry submitted by Plaintiffs. As Plaintiffs correctly point out in their reply, Defendants' general characterizations of this case do not render the hours spent unreasonable. ECF No. 68 at 5. Further, Defendants' own failure to take depositions or serve discovery does not render other work performed by Plaintiffs' counsel unreasonable. *Id.*

Nonetheless, upon review of the time logs submitted by Plaintiffs, ECF No. 64-1 at 9–27; ECF No. 64-2 at 8–13; ECF No. 64-3 at 7–14, the Court will strike those 20.8 hours which are redacted so heavily as to render the billing entries unintelligible. *See e.g.*, *Villarreal v. Saenz*, No. 5-20-CV-00571-OLG, 2022 WL 19572593, at *4 (W.D. Tex. Nov. 30, 2022), *report and recommendation adopted sub nom. Villareal v. Saenz*, No. SA-20-CV-571-OLG, 2023 WL 3069399 (W.D. Tex. Jan. 11, 2023) ("[T]he Court will not award fees where the redactions effectively render the billing entries unintelligible."). Otherwise, the Court finds the attorney hours asserted by Plaintiffs to be reasonable.

Defendants also take issue with the hours billed by paralegals and law clerks in this case. ECF No. 66 at 9. Specifically, Defendants argue all time billed by the paralegals and law clerks in this case is unrecoverable because that time involves "billing for reviewing and sending emails, Teams Chats and Conferences, and formatting and filings. These are not the activities of an attorney." *Id.*

In the Fifth Circuit, paralegal expenses are "only [recoverable] to the extent that the paralegal performs work traditionally done by an attorney." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). All other paralegal work is considered "unrecoverable overhead expenses." *Id.* (citing *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 & n.1 (5th Cir. 1980)). "There is no precise test for determining whether a task is legal or clerical." *Malick v. NCO Fin.*

*Servs., Inc.*, No. CIV.A. H-14-1545, 2015 WL 4078037, at \*5 n.4 (S.D. Tex. July 6, 2015). Courts have found legal work may include tasks such as assisting with depositions and document production (under certain circumstances), preparing subpoenas, conducting factual investigation, and compiling data. *See id.* (collecting cases). Conversely, courts have deemed non-compensable tasks such as reviewing and calendaring deadlines; printing, copying, and filing documents; drafting cover letters; ordering transcripts; organizing and updating materials and binders; loading and organizing computer databases; redacting and assembling exhibits; and transmitting documents. *Gill v. Bullzeye Oilfield Servs.*, LLC, No. SA-15-CV-1166-DAE, 2018 WL 4677902, at \*3 (W.D. Tex. July 19, 2018), *report and recommendation adopted,* No. 5:15-CV-1166-DAE, 2018 WL 4770853 (W.D. Tex. Sept. 25, 2018).

After review, the Court will reduce the paralegal and law clerk hours by 39.4 hours. First, Denise Altobelli, BGL's paralegal, recorded a total of 87.9 hours of work in this matter. ECF No. 64 at 11. Upon review, 50.5 hours of Altobelli's work falls within that typically completed by an attorney, including "draft[ing] Proposed Preliminary Injunction order," "assist[ing] with 30(b)(6) deposition", and "review[ing], cite check[ing], and proofread[ing] Motion for Summary Judgment." ECF No. 64-1 at 10–15. Second, Shilpa Jindia, BGL's law clerk, recorded a total of 12.6 hours of work in this matter. ECF No. 64 at 11. Upon review, Jindia completed 11 hours of recoverable work, including drafting an outline for a reply in support of preliminary response and conducting research regarding the Texas Election Code in support of supplemental briefing for a preliminary injunction. ECF No. 64-1 at 26. Third, Natasha Reifenberg, BGL's law clerk, performed a total of 4.4 hours of work in the matter. ECF No. 64 at 11. Upon review, Reifenberg completed 4 hours of recoverable work including legal research and writing a memorandum. ECF

No. 64-1 at 27. All hours recorded for work performed by the other two paralegals in this matter are recoverable. *See* ECF. No. 64-2 at 13; ECF No. 64-3 at 12–13.

Thus, the Court calculates a total of 581.05 attorney hours and 82.75 paralegal and law clerk hours reasonably expended on the litigation.

### 2. *Rates*

Second, Plaintiffs' request the Court apply those customary hourly rates charged by attorneys in the Houston legal market and the national legal market. ECF No. 64 at 8–11. In response, Defendants argue the Court should apply the customary hourly rates charged by attorneys in San Antonio rather than Houston, Texas. ECF No. 66 at 4–5.

In determining the lodestar, the Court must determine a reasonable hourly rate based on the "prevailing market rates in the relevant community," rather than based on what attorneys charged their client. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Though Plaintiffs submit evidence as to the reasonableness of their attorneys' rates in the Houston legal market, Plaintiffs fail to submit any evidence as to the reasonableness of their attorneys' rates in the relevant legal market—San Antonio. *See* ECF Nos. 64, 68. As other Courts have done previously, this Court takes judicial notice of Texas State Bar surveys in setting a reasonable hourly rate. *See Villarreal*, 2022 WL 19572593, at *6. According to a 2019 survey, $285 is the median hourly rate for San Antonio.[1] Other decisions have found similar rates to be reasonable. *See id.* at *6 (collecting cases).[2] With respect to paralegal hourly rates, other courts have set a reasonable rate at $120 per hour. *See Reyes v. Stone*, No. 11-CV-110-DAE, 2014 WL 4851810, at *2 (W.D. Tex.

---

[1] *2019 Income and Hourly Rates*, Tex. B. Ass'n, at 10 (2020), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=54237 (last visited Oct. 28, 2022).

[2] The Court recognizes that the results from the 2019 survey are arguably on the cusp of becoming stale. But the Court has been unable to locate more recent data from the State Bar of Texas.

Sept. 29, 2014). As such, the Court concludes that reasonable rates for attorney work, and paralegal and law clerk work, are $285 per hour and $120 per hour, respectively.

Lastly, Plaintiffs seek fees for 61.65 hours of attorney travel time. ECF No. 64-1 at 17–21; ECF No. 64-2 at 11, 13. Following the lead of other courts in the Fifth Circuit, the Court reduces the hourly rate for that time by 50%. *See*, *e.g.*, *Peterson v. Epic Diving & Marine Servs., LLC*, No. CV 11-2058, 2012 WL 13055685, at *4 (E.D. La. Nov. 13, 2012) ("[T]he Court notes that attorney travel time is typically compensated at 50% of the reasonable hourly rate.").

Thus, based on the Court's calculation of 581.05 attorney hours, including 61.65 attorney travel hours, and 82.75 paralegal and law clerk hours reasonably and necessarily incurred in litigating this matter as well as reasonable hourly rates for that time, the Court finds the lodestar in this case to be $166,744.13.

### iii.   *Johnson* Factors

The Court now assesses whether an upward or downward adjustment of the lodestar is proper based on the factors outlined in *Johnson,* 488 F.2d 714 (5th Cir. 1974). *See Rodney*, 853 F. App'x at 924. "There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden 'of showing that such an adjustment is necessary to the determination of a reasonable fee.'" *Walker v. U.S. Dept. of Housing and Urban Dev.,* 99 F.3d 761, 771 (5th Cir. 1996).

Here, Plaintiffs do not request an upward adjustment of the lodestar amount based on any one of these factors. ECF No. 6 at 12. Moreover, the Court does not find that an upward adjustment to the lodestar is appropriate. Defendants, however, argue a downward adjustment is warranted based on five factors. ECF No. 66 at 6–9.

### 1. *The Time and Labor Required*

First, Defendants request a downward adjustment, arguing there was nothing significant in this case that required extra time and effort since the case did not go to trial and required very little discovery. ECF No. 66 at 6. However, as Plaintiffs point out, Defendants oversimplify the litigation. ECF No. 68 at 9–10. For example. Plaintiffs sought multiple preliminary injunctions in this matter and deposed Defendant Callanen. *See* ECF Nos. 3, 35; ECF No. 68 at 9–10. Accordingly, the Court will not adjust the lodestar based on this factor.

### 2. *The Novelty and Difficulty of The Issues*

Second, Defendants unsuccessfully argue for a downward adjustment based on the novelty and difficulty of the issues and Plaintiffs' counsel familiarity with these issues. ECF No. 66 at 7. Rather, this factor is meant to "appropriately compensate[] [attorneys] for accepting the challenge" of taking on a case with issues of first impression, not reduce compensation for taking on cases with issues an attorney is familiar with. *See Johnson,* 488 F.2d at 717. No adjustment of the lodestar is appropriate under this factor.

### 3. *The Skill Required to Perform the Legal Service Adequately*

Third, the Court will not adjust the lodestar downward based on Defendants' contention that this case did not require Plaintiffs to staff eight attorneys on the matter. *Id.* While the Court questions the need for eight attorneys, three paralegals, and two law clerks on this matter, the Court will not apply a reduction on this basis in light of the other reductions made by the Court.

### 4. *Time Limitations Imposed by The Client or The Circumstances*

Fourth, in one sentence, Defendants argue that "there were no difficult time limitations in this case." ECF No. 66 at 7. In reply, Plaintiffs set forth several time limits imposed on them by the electoral nature of the case. ECF No. 68 at 11–12. This factor considers time constraints or

demands that would entitle a lawyer to "some premium." *Johnson*, 488 F.2d at 718 ("Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to . . . handle other matters at a late stage in the proceedings."). Because Plaintiffs have not requested an upward adjustment based on this factor, nor have Defendants articulated any meaningful rationale for a downward adjustment, the Court declines to adjust the lodestar based on this factor.

### 5. The Amount Involved and the Results Obtained

Fifth, Defendants argue the results obtained in this case require a downward adjustment. Defendants correctly point out the Fifth Circuit has stated "[t]he most critical factor in determining a fee award is the 'degree of success obtained.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003) (alterations in original and internal quotations omitted). Defendants contend the limited impact of the Court's injunction supports a downward adjustment of the lodestar. ECF No. 66 at 1–3, 8.[3]

After reviewing the November 2023 election report, the Court simply cannot avoid the fact that only four people ultimately requested a RAVBM ballot from the Bexar County Elections Department for the November 2023 election. ECF No. 72 at 2.[4] Though this factor primarily focuses on measuring the relief requested against the relief obtained, *see Combs v. City of Huntington, Tex.*, 829 F.3d 388, 397 (5th Cir. 2016), the Court holds that the ultimate impact of an injunction may inform an adjustment of the lodestar under this flexible inquiry, *cf Migis v.*

---

[3] Defendants' response also requested a stay of this Court's decision on attorneys' fees until after Defendants could file an election report, as required under the Court's injunction. ECF No. 66 at 1–3. This report was required to detail, among other things, the number of individuals who requested an RAVBM ballot; the number of individuals who were issued an RAVBM ballot; the number of individuals who submitted an RAVBM ballot; and the number of RAVBM ballots that were accepted and rejected, and the reason for any rejections. ECF No. 62. This Court granted Defendants' request, and the report was filed on December 22, 2023. ECF No. 72.

[4] Nonetheless, the Court acknowledges the November 2023 election report (ECF No. 72) is only one piece of the puzzle as the Court's permanent injunction remains in place with respect to forthcoming elections.

*Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (holding the district court abused its discretion in awarding an "attorney's fee award was over six and one-half times the amount of damages awarded").

In addition, the Court notes that Plaintiffs were not entirely successful. Though Plaintiffs sought relief on behalf of all blind and "print-disabled" voters, the Court concluded the term "print-disabled" was potentially too broad and limited all relief to blind and visually impaired Texans. ECF No. 60 at 9 n.10. Accordingly, the Court implements a one-third reduction of the lodestar. *See* ECF No. 72.

### 6. Remaining Factors

Lastly, neither party makes any additional meaningful arguments for an upward or downward adjustment based on the remaining factors. ECF. No. 66 at 8–9; ECF No. 68 at 12–13. The Court finds that none of the remaining *Johnson* factors justify an adjustment of the lodestar.

\* \* \*

Accordingly, accounting for the one-third reduction in fees based on the degree of success obtained in this litigation, the Court will award $111,162.75 in attorneys' fees to Plaintiffs.

### b. Costs

As the prevailing parties, Plaintiffs seek $8,729.83 in costs pursuant to Federal Rule of Civil Procedure 54(d). ECF No. 64-4 at 2. Rule 54(d) provides that costs "shall be allowed as of course to the prevailing party." Section 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the authority found in Rule 54(d). *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004); *see also Crawford Fitting Co. v. Gibbons*, 482 U.S. 437, 441 (1987). Thus, unless otherwise authorized by statute, the types of

costs that may be awarded under Federal Rule of Civil Procedure 54(d) are limited to those enumerated in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

### i.   Fees of the Clerk

Plaintiffs seek an award of $702.00 for fees of the clerk, and this request is supported by receipts for the transactions. ECF No. 64-4 at 2, 8–14. While the Court will permit Plaintiffs to recover the $402.00 filing fee, the Court will not permit Plaintiffs to recover pro hac vice fees. *See Sois v. Crescent Drilling & Prod., Inc.*, No. SA-19-CV-01194-FB, 2023 WL 8707421, at *3 (W.D. Tex. Oct. 19, 2023), *report and recommendation adopted sub nom. Solis v. Crescent Drilling & Prod., Inc.*, No. CV SA-19-CA-1194-FB, 2023 WL 8704782 (W.D. Tex. Dec. 15, 2023) (declining to permit recovery of pro hac vice fees as costs under § 1920). Thus, the Court awards $402.00 for fees of the clerk.

### ii.   Fees for Printed or Electronically Recorded Transcripts Necessarily Obtained for Use in the Case

Plaintiffs seek $1,228.00 for printed or electronically recorded transcripts necessarily obtained for use in this case, namely deposition transcripts for Jacquelyn Callanen. ECF No. 64-4 at 3. This request is supported by receipts. *Id.* at 16. Costs related to the taking of depositions are allowed under § 1920(2) "if the materials were necessarily obtained for use in the

case." 28 U.S.C. § 1920(2); *Stearns Airport Equip. Co., Inc. v. FMC Corp.,* 170 F.3d 518, 536 (5th Cir. 1999). "[A] deposition need not be introduced into evidence at trial in order to be necessarily obtained for the use in the case." *Fogleman v. ARAMCO,* 920 F.2d 278, 285 (5th Cir. 1991) (quotations omitted). In addition, copies of depositions are allowed if they were necessarily obtained for use in a case pursuant to § 1920(4). *Gaddis v. United States,* 381 F.3d 444, 456 (5th Cir. 2004). Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court. *Fogleman,* 920 F.2d at 285–86. The Court finds transcripts of Jacquelyn Callanen's deposition were necessarily obtained for use in this case. The Court thus awards $1,228.00 for the fees incurred for printed or electronically recorded transcripts of depositions.

### iii.   Other Costs – Postage, Legal Research, and Travel Costs

Finally, Plaintiffs seek an award of $6,799.83 in litigation-related expenses that are not recoverable under § 1920, including $0.53 for postage, $3,338.23 for legal research, $22.10 in PACER fees, and $2,896.98 in travel expenses. ECF No. 64-4 at 2-7. None of these expenses are recoverable under § 1920 because they are not enumerated in the statute. *See Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n,* No. SA-17-CV-00270-XR, 2021 WL 2444957, at *8 (W.D. Tex. June 15, 2021) (determining charges for postage, legal research, and attorney travel expenses are not recoverable under § 1920). The Court will not award these costs.

### CONCLUSION

Plaintiffs' motion and application for attorneys' fees and costs (ECF No. 64) is hereby **GRANTED IN PART** and **DENIED IN PART**. Defendants are **ORDERED** to pay $111,162.75 in attorneys' fees, and $1,630.00 in costs.

It is so **ORDERED**.

**SIGNED** this 18th day of March, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE